UNITED STATES of America,
Appellant,

v.

SYLACAUGA PROPERTIES, INC.,
Appellee.

No. 20157.

United States Court of Appeals
Fifth Circuit.

Oct. 1, 1963.

Rehearing Denied Dec. 9, 1963.

488

Macon L. Weaver, U. S. Atty., Hugh B. Harris, Jr., Asst. U. S. Atty., Birmingham, Ala., Morton Hollander, Sherman L. Cohn, Barbara W. Deutsch, Attys., Dept. of Justice, Washington, D. C., John W. Douglas, Acting Asst. Atty. Gen., for appellant.

William H. Ellis, Birmingham, Ala., for appellee.

Before CAMERON and WISDOM, Circuit Judges, and DeVANE, District Judge.

WISDOM, Circuit Judge.

In this action the United States seeks to foreclose two mortgages, one on realty and one on personalty, against two housing projects, containing 92 units, in Sylacauga, Alabama. The projects are owned by Sylacauga Properties, Inc., which had purchased the property for about $40,000 after the Government had bid it in at a foreclosure sale of an earlier mortgage. The mortgages in suit secure a note in favor of the Federal Housing Commissioner for $362,000, with interest at 4½% per annum, representing the unpaid purchase price of the property. The loan was made and the mortgages were given pursuant to the National Housing Act, 48 Stat. 1252, as amended, 12 U.S. C.A. § 1713. Each mortgage contains a power of sale clause, and provides, in the event of judicial foreclosure, for the appointment of a receiver of rents and profits during the pendency of foreclosure. As additional security, the mortgage on the realty contains an express assignment and pledge of rents and profits arising during foreclosure. The mortgagor expressly waives all defenses to the appointment of a receiver of rents and profits. The provision for appointment of a receiver was an express condition upon which the loan was given.[1]

May 26, 1959, a year and a half after defaults commenced, the United States filed suit to foreclose. The principal due and unpaid was $357,501.34. The complaint prays for (1) the appointment of a receiver to manage the property and to collect rents and income pending foreclosure, (2) judgment on the note, (3) an order of foreclosure and sale, and (4) a deficiency judgment, if necessary.

Sylacauga raised no defense to the foreclosure. In its answer, the defendant admitted the execution of the mortgages, the default, and the amount of

[1.] The pertinent paragraph of the mortgage reads as follows (emphasis in Record):

"11. That the holder of this mortgage, in any action to foreclose, shall be entitled to the appointment of a receiver of the rents and profits of the mortgaged premises as a matter of right and without notice, with power to collect the rents, issues, and profits of said mortgaged premises, due and becoming due during the pendency of such foreclosure suit, such rents and profits being hereby expressly assigned and pledged as additional security for the payment of the indebtedness secured by this mortgage without regard to the value of the mortgaged premises or the solvency of any person or persons liable for the payment of the mortgage and indebtedness. *The Mort-*

*gagor for itself and any subsequent owner hereby waives any and all defenses to the application for a receiver as above and hereby specifically consents to such appointment without notice but nothing herein contained is to be construed to deprive the holder of the mortgage of any other right, remedy, or privilege it may now have under the law to have a receiver appointed.* The provision for the appointment of a receiver of the rents and profits and the assignment of such rents and profits, is made an express condition upon which the loan hereby secured is made. The rights and remedies herein provided for shall be deemed to be cumulative and in addition to, and not in limitation of, those provided by law."

principal then due. It resisted the appointment of a receiver, however, and requested a set-off for certain discrepancies in the chattels listed in the inventory of the chattel mortgage. At a hearing on June 16, 1959, it appeared that by May 15, 1959, arrearages had amounted to $26,764.39, and that the Government had received no payments at all for six months. Rostenberg, president and chief stockholder of Sylacauga, testified that during the period after default, $2,245 had been paid to a real estate managing company of which Rostenberg was principal officer and major stockholder, equipment had been purchased from a second company in which Rostenberg held a controlling interest, and $1,000 had been paid to him in repayment of a loan. Rostenberg said he would try to get additional financing and asked for a chance to liquidate the existing arrearages. The court thereupon appointed James C. Owings, *the defendant's resident manager*, to receive rents, to preserve the property, and to make necessary reports to the court. Owings executed a receiver's performance bond which was filed with the court, and the cause was continued for 90 days, until September 16, 1959.

September 18, 1959, the court, over the Government's objections, *again* ordered a continuance of the matter for an additional 90 days, to December 15, 1959. December 15, 1959, the court, again over the Government's objections, ordered another continuance of the matter, this time for six months, to June 19, 1960. June 16, 1960, the court ordered, again over the Government's objection, a *fourth* continuance of the matter, for another six months, to December 15, 1960. December 27, 1960, the court ordered, again over the Government's objections, a *fifth* continuance, this time for a *year*, to December 15, 1961. And on May 15, 1962, the court ordered, over the strong objections of the Government, a *sixth* continuance, this time for an indefinite period.

For over three years the United States has been unable to exercise its undisputed contract right to foreclose. The May 1962 order, for the first time, ordered payments ($250 a quarter) to be applied on account of interest arrears, which at that time amounted to $19,630.30. The court also directed that interest arrearages be fully paid by the end of three years, that is, by May 1965. At no time has the court directed payment of currently maturing principal—which Sylacauga contracted to pay at the rate of at least $603.34 per month. Nor at any time has the court directed the payment of arrearages of principal (amounting on May 15, 1962, to $32,790.54) or arrearages of a replacement reserve required by the mortgage (then amounting to $11,-418.55).

The last order has the effect of continuing the matter for at least three more years. Thus, the district court has granted Sylacauga a moratorium on its contract for more than six years and has appointed as receiver the mortgagor's resident manager.

On this appeal, the appellee, first, denies that there is a receivership, contending that Owings's duties were so limited that it cannot be said that he was a receiver in the usual sense of the word. Then, assuming that there is a receivership, Sylacauga contends that this appeal is an improper attempt to try the case piecemeal; the continuance order on which this appeal is based is an interlocutory order which is not appealable.

Getting down to the equities, Rostenberg thinks that he is doing his best—angels can do no more—and, given time, everything will work out for the best. The trial judge agrees with this notion. Here, the appellee says, is "a former United States Army Officer, retired for a physical disability, who with his family had put some $40,000 in the purchase of the housing units, the subject of this suit, was handling the project without any expense to Appellant and apparently [was] about to save his own investment in the project and prevent the usual terrific loss to the Government after foreclosure".

It is not for Mr. Rostenberg and it is not the district court to decide what is

best for the United States in the administration of Federal Housing loans and mortgages. We reverse and remand.

## I.

■ A. A receiver by any other name, or by no name, is still a receiver.

The district court's order of June 24, 1959, appoints Owings to

"receive and collect rents, assemble and preserve, to the extent necessary, said property covered by said mortgage; assemble and preserve all property covered by said mortgage which constitutes personal and movable property and see that said property is located on said premises and make reports as required by the Court of his performance of his duties hereunder."

This is a classic description of a foreclosure receiver. The limited nature of a foreclosure receivership, custodial in nature as opposed to a general equity receivership, has been lucidly defined by the Supreme Court:

"A receivership in a foreclosure suit is limited and special. The rents and profits are impounded for the benefit of a particular mortgagee, to be applied upon the debt in the event of a deficiency. [Citations omitted.] * * * There is neither winding up of the business nor attempt to reorganize it and set it going anew." Duparquet Huot Co. v. Evans, 1936, 297 U.S. 216, 221, 56 S.Ct. 412, 414, 80 L.Ed. 591. See also 1 Clark, Receivers, § 19.1 (3d ed. 1959).

■■ Owings's faithful performance of his custodial duties was insured by a standard receiver's bond, ordered and approved by the district court as is customary in federal receiverships. 1 Clark, Receivers, § 120, 121. The custodial nature of a foreclosure receiver generally precludes the receiver's incurring expenses for repairs or operation of the property. See Cake v. Mohun, 1896, 164 U.S. 311, 17 S.Ct. 100, 41 L.Ed. 447; 4 Clark, Receivers, § 965.1. It is therefore not unusual, contrary to appellee's suggestion, to find that appellee, itself, was ordered to maintain the property in good condition. The absence in the record of expenses incurred for or by the receiver is hardly surprising in view of Owings's limited role as a foreclosure receiver. He has no authority under the district court appointment to incur repair or operating expenses. Cake v. Mohun, 1896, 164 U.S. 311, 17 S.Ct. 100, 41 L.Ed. 447. And the receiver's allowance for custodial services is often presented only in the final accounting prior to discharge of the receiver. See, e. g., Cake v. Mohun, 1896, 164 U.S. 311, 17 S.Ct. 100, 41 L.Ed. 447; Mitchell v. Lay, 9 Cir. 1932, 60 F.2d 941; Burroughs v. Toxaway Co., 4 Cir. 1911, 185 F. 435.

We regard it as unrealistic to consider the appointment of Owings as anything except as the appointment of a receiver. Sylacauga, itself, in a "Memorandum in Support of [its] Motion to Dismiss" the appeal, referred "to the receivership previously ordered."

■■ B. The order appealed from is not an order of continuance. Nor is the appeal from the order appointing Owings as the receiver, although the Government, without questioning Owings's integrity or character, properly enough objects to the appointment of an interested person as receiver. The order appealed from is the district court's refusal to wind up the receivership, to order foreclosure and sale, a refusal reviewable under 28 U.S. C.A. § 1292(a) (2).[2]

■ The Government made no objection to the first order continuing the case for 90 days. There was no reason to oppose it. As it became clear, however, from the numerous continuances,

2. 28 U.S.C.A. § 1292 provides in pertinent part:
"(a) The courts of appeals shall have jurisdiction of appeals from:
  *     *     *     *     *

"(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; * * *".

that Sylacauga was being granted a moratorium, the United States Attorney objected to each continuance. The effect of the order of May 15, 1962, continuing the case indefinitely and giving the mortgagor three years in which to pay up the interest arrearages is a plain, unmistakable denial of the Government's right to prompt foreclosure and sale of the property. In an analogous situation, this Court held in United States v. Lynd, 5 Cir. 1962, 301 F.2d 818, that where an order should have been issued as a matter of course and the effect of the court's failure to issue the order and failure expressly to deny the order were tantamount to a refusal, such refusal was appealable within the meaning of Section 1292, 28 U.S.C.A. Unless it were appealable, the litigant's rights could be defeated indefinitely by continuances, subject only to such relief as mandamus might offer.

We hold therefore that the order of May 15, 1962, constituted a refusal to wind up the receivership, a denial of the Government's right to foreclosure and sale in accordance with its mortgages, appealable under 28 U.S.C.A. § 1292(a) (2).

## II.

■ The appellee relies heavily on state law. State law has no application to this proceeding. This is an action by the United States, authorized by 28 U.S. C.A. § 1345 and pursuant to Section 207 of the National Housing Act, 48 Stat. 1252, as amended, 12 U.S.C.A. § 1713. "In cases affecting government money and the credit of the government, the authorities set up the principle that federal law should apply. This principle is true in cases arising under the National Housing Act." United States v. Helz, 6 Cir. 1963, 314 F.2d 301.

■ The force and meaning of the receivership clause in FHA mortgages are matters to be decided according to federal law, with especial attention to the scope and purpose of the National Housing Act itself. Garden Homes v. United States, 1 Cir. 1952, 200 F.2d 299; United States v. View Crest Garden Apts., 9 Cir. 1959, 268 F.2d 380, certiorari denied, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120, and 9 Cir., 281 F.2d 844, certiorari denied, 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195; United States v. Queen's Court Apartments, 9 Cir. 1961, 288 F.2d 253, and 296 F.2d 534. See, for example, United States v. Helz, 6 Cir. 1963, 314 F. 2d 301, (inapplicability of common law disabilities to a married woman who has signed an FHA note); United States v. Woodland Terrace, Inc., 4 Cir. 1962, 293 F.2d 505, certiorari denied, 1961, 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (right of FHA to foreclose a mortgage despite "work-out plan" offered by defaulting mortgagor).

■ When a default is undisputed, as it is in this case, the court "[cannot] abrogate the right of foreclosure and sale for which the * * * creditor stipulated, which is incorporated in the contract and on the strength of which he lent his money." Gay v. Hudson River Electric Power Co., 2 Cir. 1911, 184 F. 689, 693–4; Bronson v. Kinzie, 1 How. (42 U.S.) 311, 317–319, 11 L.Ed. 143; United States v. Woodland Terrace, 4 Cir. 1961, 293 F.2d 505; United States v. Anderson Apartments, W.D.S.C. 114 F.Supp. 69.

■ It is not within the province of the mortgagor or, indeed, of a district court to decide whether a moratorium on an FHA mortgage is in the best interests of the Government. To the extent that there is any latitude in determining when to foreclose an FHA mortgage after a default, the determination is an administrative matter for the Federal Housing Commissioner. The prompt and effective enforcement of the Government's rights to a foreclosure and sale, embodied within the mortgage and the traditional principles of mortgage law, is in consonance with the policy of the National Housing Act. Section 207(k) of the Act, 48 Stat. 1252, as amended, 12 U.S.C.A. § 1713(k), instructs the Housing Commissioner, with regard to rental property on which mortgage insurance has been issued, to insti-

**492**

tute foreclosure proceedings within one year of default and to prosecute such proceedings to a speedy conclusion. The plain intent of this provision is that unsuccessful ventures shall be wound up as quickly as possible, so that (1) the Government's security may be protected against deterioration, and (2) the matured but unpaid indebtedness may be collected as soon as possible and be available for further use under the Housing Program.

The order below is reversed and the case remanded with instructions to proceed promptly with the decree of foreclosure and sale. Pending foreclosure, a disinterested person should be appointed as receiver.

CAMERON, Circuit Judge, concurs in the result.