**UNITED STATES of America, Appellants,**

v.

**VICTORY HIGHWAY VILLAGE, INC., Appellee.**

**No. 80–1740.**

United States Court of Appeals, Eighth Circuit.

Submitted May 18, 1981.

Decided Oct. 28, 1981.

---

490

Alice Daniel, Asst. Atty. Gen., Thomas S. Martin, Acting Asst. Atty. Gen., Washington, D. C., Thomas K. Berg, U. S. Atty., Minneapolis, Minn., Michael Kimmel, Mark N. Mutterperl, argued, Attys., Dept. of Justice, Civ. Div., Washington, D. C., for the U. S.

Joseph T. O'Neill, argued, and Lawrence A. Wilford, O'Neill, Burke & O'Neill, Ltd., St. Paul, Minn., for appellee.

Before LAY, Chief Circuit Judge, ARNOLD, Circuit Judge, and BECKER,* Senior District Judge.

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

BECKER, Senior District Judge.

This is an appeal by the appellant United States from a judgment of the District Court for the District of Minnesota (1) denying the United States' claims for judicial foreclosure on a mortgage because of alleged default in payment of notes it holds, and (2) from entry of judgment in favor of appellee Victory Highway Village, Inc. (VHV) requiring the United States to accept an offer of appellee VHV to pay $256,-115.39, which would bring VHV current on its outstanding mortgage notes up to March 1980.

The United States of America, appellant, on behalf of the Secretary of Housing and Urban Development (HUD) filed in the United States District Court for the District of Minnesota a civil action for foreclosure of two mortgages on real estate and improvements and for a deficiency judgment on notes because of alleged default in the payment of notes secured by the mortgagor VHV.

The District Court found that VHV had defaulted on its mortgage obligations but ruled that foreclosure would be denied on equitable grounds and that the parties should be "returned to the position they would have been in had the work-out agreement been originally complied with in total."

### The Facts

Pursuant to the federal housing program promulgated by Congress in the National Housing Act, 12 U.S.C. § 1701 et seq., on March 1, 1973 VHV, by its sole stockholder James Dalton (Dalton), borrowed $792,-500.00 from Draper and Kramer, Inc. (Draper and Kramer) to build a mobile home trailer park in Mankato, Minnesota. On the same day, March 1, 1973, VHV borrowed an additional $27,600.00 from Draper and Kramer. To secure both notes, VHV executed and delivered to Draper and Kramer two mortgages covering the property, the subject of the foreclosure action (subject property). Also on the same day, March 1, 1973, VHV and Draper and Kramer entered into a consolidation agreement construing the two mortgages as one mortgage lien available in event of default under the terms of either or both notes and mortgages. The consolidation agreement was amended on March 23, 1973 to correct an error contained in the consolidation agreement of March 1, 1973. On March 26, 1973, Draper and Kramer assigned the consolidated notes and mortgages to the Federal National Mortgage Association (FNMA). The consolidated notes and mortgages were assigned by FNMA, on June 23, 1974, to the Secretary of Housing and Urban Development (HUD).

VHV began development of the mobile home trailer park in April 1973 and continued thereafter. The consolidated notes in the total amount of $820,100.00, bore interest at the rate of seven and one-half percent per annum, and were secured by mortgages on the subject property, as stated above. The consolidated notes required monthly payments of principal and interest in the amount of $5,419.10 each. VHV made the required monthly payments on the notes through September 1973. In October or November 1973, VHV made no timely monthly payment. During the period between October 1973 and March 1976, VHV from time to time did not make a full monthly payment. At a meeting on July 11, 1974, HUD officials told Dalton for VHV "to continue making the payments as best he could" and to stay working with the project. VHV made partial payments of $1,000 a month periodically beginning in March 1975, and HUD allowed this procedure to continue, without any enforcement action from 1973 through 1976 even though VHV did not make full payments or pay the past due sums.

On June 3, 1976, following several meetings between HUD agents and Dalton for VHV, HUD, and Dalton for VHV, entered into a written agreement entitled "Provisional Work-Out Arrangement". This agreement stated that VHV requested HUD "to hold the subject mortgage in default under the terms and conditions stated [therein], to afford an opportunity to effect reinstatement"; that the arrangement was

"on a month-to-month basis"; that HUD would "take no action because of the existing monetary default prior to January 1977, provided the minimum payments recited [therein] are made and the mortgagor's performance is otherwise satisfactory"; that on or before the 10th day of each month, VHV should make "[a] payment equal to a service charge, tax accruals, as billed, and one-half interest"; that the first payment shall be made in July 1976; and that "[i]n consideration of this agreement, early in January 1977, the mortgagor agrees to submit a plan for paying through three-fourths interest for a period of six months."

VHV made the required payments under the "work-out agreement" for July 1976 through December 1976. By letter dated December 3, 1976, and received in December 1976, VHV submitted a proposal to HUD for payment of one-half interest for January 1977 through March 1977 and, beginning in April 1977, for increasing the interest payments by five percent each month until 100% interest payments were reached. At a meeting on December 23, 1976 and by letter of the same date, VHV was informed that the proposal of December 3, 1976 was unacceptable to HUD; that VHV's mortgage had been in default for over 38 months with an accrued delinquency of over $185,000; and that if VHV could not meet the requirements to which it had agreed "it will not be in the best interest of the Secretary of Housing and Urban Development to continue to hold [VHV's] mortgage out of foreclosure, and [HUD] will be forced to initiate foreclosure proceedings." By letter to VHV dated December 27, 1976, HUD confirmed a schedule of mortgage payments which required VHV to pay January 1977 service charge, real estate taxes and one-half interest; required VHV to pay three-quarters interest for six months beginning February 1977 through July 1977; and on August 1, 1977, required VHV to pay full interest and principal on the outstanding balance of the original mortgage plus reamortized delinquency. VHV agreed to begin paying three-quarters interest in February 1977; however, VHV paid only one-half interest for February. VHV made the required three-quarters interest payments for March 1977 through July 1977, but did not make the required full-interest payments in August 1977 or September 1977. The payments made for August 1977 and September 1977 were for three-quarters interest. At a meeting with HUD on November 4, 1977 Dalton for VHV stated that VHV could not make full-interest payments for at least another year, and would not amortize the delinquency. Three-quarters interest payments for October 1977 and November 1977 were tendered by checks of VHV uncashed by HUD, and returned to the maker (VHV) in February 1978.

HUD decided to institute foreclosure proceedings. VHV's attorney was served with foreclosure papers in October 1977 and VHV otherwise learned of the foreclosure efforts from a third party on October 19, 1977. Dalton and HUD employees met on November 4, 1977 in an effort to come to some agreement regarding the payments to be made on the mortgage. Dalton informed HUD at that meeting that it could not make the payments earlier required to begin in August 1977 and that VHV "was not in a position to begin making the payments necessary to amortize the delinquency."

On November 14, 1977, the United States filed a foreclosure action under section 207(k) of the National Housing Act, 12 U.S.C. 1713(k), in the United States District Court for the District of Minnesota. A trial on the merits was held beginning on April 9, 1980. At the trial, VHV made an "offer of judgment" in the amount of $256,115.39, said to be then due under the work-out agreement. A part of this sum $245,515.00 consisted of money set aside each month and deposited partially in Certificates of Deposit in the name of VHV at Valley National Bank in Mankato, Minnesota and Security State Bank in Mankato, Minnesota and partially in a passbook savings account in the name of James Dalton at Valley National Bank. These deposits were under the control of VHV and the chief officer Dalton only.

## The Decision of the District Court

The District Court, in its "Findings of Fact, Conclusions of Law, and Order for Judgment" dated June 12, 1980, found that VHV had not made a full monthly payment on its mortgage obligations since October 1973.

The District Court in its "Conclusions of Law" concluded that the provisional work-out agreement dated June 3, 1976 "was a modification of the underlying mortgage contract"; that the provisional work-out agreement was itself modified by letters from HUD of December 27, 1976 and January 24, 1977; that the provisional work-out agreement as modified was agreed "to be the operative contract" for the time period which it covered; that VHV had violated the terms of the provisional work-out agreement, as modified, in February 1977 when it failed to pay the difference between the three-quarters interest payment required and the one-half interest payment made; that the agreement of July 11, 1974 was an agreement by HUD not to foreclose upon which VHV relied; that HUD waived its right to the three-quarters interest payment in February 1977 when "it failed to notify VHV or Dalton, at any time, of the payment shortage"; that HUD is "estopped from asserting this payment shortage as a violation of the provisional work-out agreement so as to entitle it to foreclosure"; that except for the short interest period in February 1977 VHV has complied with the provisional work-out agreement as modified by the two letters; that it would be inequitable to allow foreclosure because HUD "persuaded Dalton to remain working with the VHV project" after the default; that

because the decision to foreclose by HUD officials in Washington was based on some "misleading and inaccurate" assertions by local HUD officials; that "VHV was never given notice of the foreclosure action as specified in the regulatory agreement" by registered or certified mail; that "VHV never had an opportunity to cure any potential default which HUD considered as existing on the project"; and that "since VHV [had] made an offer of judgment to HUD of $256,115.39 which would bring VHV current on its obligations as anticipated by the work-out agreement, foreclosure [would] be denied and the parties [would] be returned to the position they would have been in had the work-out agreement been originally complied with in total". The District Court denied foreclosure and ordered that VHV pay the United States $256,115.39 and that VHV pay the United States "on a monthly basis an amount equal to the normal sums called for under the underlying mortgage and mortgage notes, plus an amount adequate to amortize the remaining deficit of $161,074.47, plus interest of $18,840.18, over the remaining term of the underlying mortgage and mortgage note."

## The Contentions on Appeal

On August 11, 1980, the United States filed its notice of appeal from the Order of the District Court.**

On appeal, the appellant United States contends that the United States is entitled to foreclosure because the debt, mortgages, and default are undisputed; that HUD has already given VHV seven years to try to work out its financial difficulties and pay

---

** Though not entitled "Final Judgment" the separate document prepared by the Clerk for the United States District Court for the District of Minnesota pursuant to the order of the District Court is in fact a final judgment. The District Court, in its "Findings of Fact, Conclusions of Law, and Order for Judgment", ordered the following:

  IT IS FURTHER ordered That the clerk shall enter judgment as follows:

    The plaintiff United States of America shall take from the defendant Victory Highway Village, Inc. the sum of $256,115.39. The defendant Victory Highway Village, Inc. shall

also pay to the plaintiff from March 31, 1980 and thereafter on a monthly basis an amount equal to the normal sums called for under the underlying mortgage and mortgage note, plus an amount adequate to amortize the remaining deficit of $161,074.47, plus interest of $18,840.18, over the remaining term of the underlying mortgage and mortgage notes.

  The Clerk followed this direction and prepared what is in substance a final judgment from which the appeal was taken. So, the appeal was from a final judgment, and we have jurisdiction.

its obligations as they become due; and that the "inequities" found by the District Court to deny foreclosure are baseless, frustrate the policy of the National Housing Act, defeat the government's statutory and contractual rights, and deprive the government of moneys owing to it.

The appellee VHV contends that the District Court's findings of fact and conclusions of law were not clearly erroneous; and that the equitable defenses to the mortgage foreclosure proceedings were legally proper and supported by the evidence.

For the reasons stated hereinafter, we reverse the judgment of the District Court and remand the action for further proceedings consistent with this opinion.

*Standards of Judicial Review of Exercise of Discretion by HUD*

■ The exercise of discretion by HUD to foreclose an insured mortgage, under powers granted by § 1713(k), Title 12 U.S.C., is subject to judicial review under the Administrative Procedure Act (APA) 5 U.S.C. § 701 *et seq.* § 702 of the APA governs judicial review of the action by the Secretary of HUD in proceedings to foreclose under § 1713(k), *supra. United States v. Winthrop Towers*, 628 F.2d 1028, at 1032 (C.A. 7 1980). § 706(2), Title 5 of the APA authorizes the reviewing court to

hold unlawful and set aside agency action, findings and conclusions found to be—

A. arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

■ The Secretary of HUD has a very broad discretion to exercise in deciding whether to foreclose when a default occurs. The review of that discretion, as stated above, is limited by § 706(2), Title 5 U.S.C. The burden of introducing evidence of arbitrary or capricious action, abuse of discretion or failure to comply with applicable law is upon the party resisting foreclosure. *United States v. Winthrop Towers, supra,* 628 F.2d at 1036 (C.A. 7 1980). After a thorough review of the record we conclude, for the reasons stated hereinafter, that the

appellee VHV failed to meet that burden of proof in any respect.

I.

*The United States is Entitled To Foreclose on the Mortgages and Mortgage Notes*

The District Court found that VHV first defaulted on its mortgage payment obligations in October 1973. The District Court further found that VHV violated the terms of the provisional work-out agreement in February 1977. It is undisputed that VHV has defaulted on its obligations to make periodic payments on the secured notes and mortgages. "After a default the sole situation presented is one of remedies." *United States v. View Crest Garden Apts., Inc.,* 268 F.2d 380, at 383 (C.A. 9 1959), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). "[T]he federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit—becomes predominant" once default is established. *United States v. Stadium Apts., Inc.,* 425 F.2d 358, at 363 (C.A. 9 1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

■ The United States, through HUD, has in this case, remedies as provided by its mortgage contracts with VHV. The mortgages held as security for the notes in favor of HUD contain provisions that expressly enable HUD, in the event of default, to declare all sums owing by the mortgagor immediately due and payable without notice; authorizes the power of sale of the mortgaged property; and empowers HUD to enforce payment of sums due by judicial foreclosure proceedings. When a default is undisputed, the court "[cannot] abrogate the right of foreclosure and sale . . . which is incorporated in the contract and on the strength of which [the creditor] lent his money." *United States v. Sylacauga Properties, Inc.,* 323 F.2d 487, at 491 (C.A. 5 1963).

Section 207(k) of the National Housing Act, 12 U.S.C. § 1713(k), also provides for action by HUD in the event of default. The Secretary is authorized, by this statutory provision, either to acquire possession and title to mortgaged property assigned to him by voluntary conveyance or to institute foreclosure proceedings and to prosecute such proceedings to conclusion. 12 U.S.C. § 1713(k). Therefore, HUD, for the United States, has a statutory right to foreclosure as well as a contract right.

■ While HUD must perform its duties and exercise its powers "consistently with the national housing policy" as expressed in 42 U.S.C. § 1441, it has broad discretion to choose its possible remedies in the event of default and thereby achieve national housing objectives. *United States v. Winthrop Towers, supra,* 628 F.2d at 1036 (C.A. 7 1980). The prompt enforcement of the rights of the United States through HUD to a foreclosure and sale, provided for by the mortgage agreements, the traditional principles of mortgage law, and the statutes governing federally insured mortgages, are consistent with national housing policy. *United States v. Sylacauga Properties, Inc., supra,* 323 F.2d at 491 (C.A. 5 1963). HUD's decision to foreclose is properly supported by considerations of minimizing losses from its insurance fund, preserving the assets of the insurance fund so that more projects may be insured in the future, and protecting public money from unnecessary risk. *United States v. Winthrop Towers, supra,* 628 F.2d at 1036 (C.A. 7 1980); *United States v. Sylacauga Properties, Inc., supra,* 323 F.2d at 492 (C.A. 5 1963).

■ The "Provisional Work-Out Agreement" did not modify or supersede the original mortgages and mortgage notes or alter HUD's rights to foreclosure on default. *United States v. 1300 Lafayette East,* 455 F.Supp. 988 (E.D.Mich.1978). It was "provisional", and stated therein that under the agreement HUD would "hold the subject mortgage in default", on a month to month basis, and explicitly stated that HUD would forbear on the existing monetary default until January 1977 "provided the minimum payments recited [therein were] made and the mortgagor's performance [was] other-

wise satisfactory." It was error to conclude as a matter of law that the provisional work-out agreement modified the underlying mortgage contract, and that it was itself modified by two letters and agreed to be the operative contract. The long standing default under the original notes and consolidated mortgage agreement, and the subsequent defaults under the work-out agreement entitles HUD to a judgment of foreclosure. *United States v. 1300 Lafayette East, supra,* 455 F.Supp. at 991 (E.D. Mich.1978).

■ We also note the importance of the enforcement of the terms of the mortgages. It is essential to the confidence of public and private lenders that the clear written terms of mortgages be implemented and enforced by the courts. Without such enforcement, extrinsic judicial doctrines that frustrate the terms of the mortgage documents, and any subsequent "work-out" arrangements, will impair the confidence of public and private lenders. Through strict enforcement of the terms of the mortgages and recognition of HUD's right to foreclose on default, "the federal policy to protect the treasury and to promote the security of federal investment which in turn promotes the prime purpose of the Act—to facilitate the building of homes by the use of federal credit . . ." will be preserved. *United States v. Stadium Apts., Inc., supra,* 425 F.2d at 363 (C.A. 9 1970), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). Further, by preserving confidence in mortgage security obligations, the courts will encourage future lending.

We conclude that, in light of the undisputed defaults in the obligations of the notes, mortgages and provisional agreement, the important national housing policy considerations, and the contractual and statutory right to foreclose, HUD was entitled to a judgment of foreclosure.

## II.

### *The Equitable Grounds Relied on by the District Court To Deny Foreclosure Are Erroneous*

■ The District Court found that it would be inequitable to allow foreclosure

because HUD "persuaded" Dalton to stay with the housing project after default in 1973 and because it believed HUD's local office made "misleading and inaccurate" assertions in recommending foreclosure to HUD officials in Washington. The District Court further found that HUD waived its right to the deficiency payment from February 1977 and was estopped from asserting (these defaults) payment shortage as a violation of the provisional work-out agreement because "it failed to notify VHV or Dalton, at any time, of the payment shortage." These conclusions are unsupported in fact and in law.

The conclusion that HUD "persuaded" Dalton to continue with the housing project apparently stems from Dalton's reliance on the statements of HUD officials in 1974 that Dalton should "make the payments as best he could" and the provisions of the work-out agreement that HUD would "take no action because of the existing monetary default prior to January 1977." Any reliance by Dalton on these statements was misplaced and insufficient grounds to deny foreclosure. Such statements "cannot bind the United States or work an estoppel against its exercise of a right clearly defined in the statute and reserved in the mortgage[s]." *United States v. Woodland Terrace, Inc.*, 293 F.2d 505, at 509 (C.A. 4 1961), *cert. denied*, 368 U.S. 940, 82 S.Ct. 381, 7 L.Ed.2d 338 (1961). Further, Dalton voluntarily entered into the project and the financing arrangements, assessed the risks involved and assumed the mortgage obligations. Dalton, at all times, had the choice of continuing or abandoning the project or seeking other financial arrangements. "Once [he] elected to assume the obligation and the attendant risks, [he] was bound to carry them out." *United States v. 1300 Lafayette East, supra*, 455 F.Supp. at 993 (E.D.Mich.1978).

■ The District Court's finding that it would be inequitable to allow foreclosure because it believed that HUD's local office in 1977 made misleading and inaccurate statements in recommending foreclosure is also unsupportable. No material misrepre-

sentations appear in the record. Nevertheless, whether some inaccurate statements were made or not is insignificant. What is significant is that VHV had been in default since 1973 on the original mortgage note and had subsequently defaulted on the 1976 provisional work-out agreement. Further, VHV told HUD in 1977 that it would not be able to make full payments on the mortgage obligations for at least one year. The exercise of discretion by HUD in deciding to foreclose in order to minimize losses has been repeatedly upheld. *United States v. Stadium Apts., Inc., supra*, 425 F.2d 358 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. Sylacauga Properties, Inc., supra*, 323 F.2d 487 (C.A. 5 1963); *United States v. Winthrop Towers, supra*, 628 F.2d 1028 (C.A. 7 1980). The courts have noted that in cases like this, "[t]he decision to foreclose a mortgage is fundamentally of a business and administrative nature, requiring the exercise of HUD's business and administrative judgment" and in so doing "HUD may certainly give major consideration to preservation of the assets of the insurance fund and may weigh other factors relevant to national housing policy in formulating administrative procedures and in deciding whether to foreclose a particular mortgage." *United States v. Winthrop Towers, supra*, 628 F.2d at 1036 (C.A. 7 1980). Thus, the fact of VHV's continuing default is, by itself, justification and support for HUD's decision to foreclose.

■ Finally, the District Court's conclusion of law that HUD waived its right to the payment shortage from February 1977, and was estopped from asserting the payment shortage as a violation of the provisional work-out agreement because it failed to notify VHV or Dalton of the payment shortage is erroneous. HUD was not required to give notice of default. The mortgage notes specifically provide that HUD could demand accelerated payment thereof upon default without notice; that HUD was entitled to the appointment of a receiver to take possession without notice; and that in respect to the secured notes, the

parties agreed to "waive presentment, demand, protest, notice of protest and notice of dishonor." The Regulatory Agreement incorporated in the mortgage and mortgage notes by reference states that upon a violation of the agreement "the Secretary *may* give written notice thereof, to Owners, by registered or certified mail." (Emphasis added.) Such notice was not mandatory.

The Regulatory Agreement, as well as statute 12 U.S.C. § 1713(k), grants the Secretary "discretion to elect from among several courses of action following a default." *United States v. 1300 Lafayette East, supra*, 455 F.Supp. at 992 (E.D.Mich.1978). Neither the mortgage contracts nor the Regulatory Agreement require HUD to give notice of default. Nevertheless, the evidence clearly shows that VHV had actual notice of its defaults. Dalton agreed, in the language of the provisional work-out agreement, that HUD would hold his mortgage in default, and he testified that he knowingly made partial payment in February 1977 in violation of the same work-out agreement.

We therefore conclude that the equitable grounds relied on by the District Court to deny foreclosure are erroneous and unsupported in this case.

## III.

### HUD Was Under No Obligation to Accept VHV's Offer of Judgment

The District Court ordered VHV to pay the United States $256,115.39 and to begin making monthly payments as originally required by the underlying mortgage and mortgage notes plus re-amortized deficiency payments. This order of the District Court requires HUD to accept the offer of judgment made by VHV which would, if paid, pay its arrears on its mortgage obligations up to March 1980. The District Court's reason for this order was to return the parties to the position they would have been in had the work-out agreement been originally complied with in total. The facts are, however, that VHV did not and could not comply with either the original mortgage agreements or the provisional work-

out agreement, and it remained in default under the original notes. HUD had allowed VHV to continue with its housing project in spite of its failure to make a full payment on the notes since October 1973. HUD was under no obligation to accept or even consider VHV's proposed settlement offer for "[t]he imposition of such a duty by this court would certainly deprive HUD, as a guarantor of the debt, of a good deal of needed protection." *United States v. 1300 Lafayette East, supra*, 455 F.Supp. at 993 (E.D.Mich.1978).

We note that federal law, not Minnesota law, governs the rights and liabilities of the parties in cases dealing with the remedies available upon default of a federally held or insured loan. *United States v. View Crest Garden Apts., Inc., supra*, 268 F.2d 380 (C.A. 9 1959), *cert. denied*, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959); *United States v. Chester Park Apts., Inc.*, 332 F.2d 1 (C.A. 8 1964), *cert. denied*, 379 U.S. 901, 85 S.Ct. 191, 13 L.Ed.2d 176 (1964); *United States v. Stadium Apts., Inc., supra*, 425 F.2d 358 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. Scholnick*, 606 F.2d 160 (C.A. 6 1979). Moreover, because of "an overriding federal interest in protecting the funds of the United States and in securing federal investments," federal interest predominates over state interest. *United States v. Scholnick, supra*, 606 F.2d at 164 (C.A. 6 1979). "Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted." *United States v. View Crest Garden Apts., Inc., supra*, 268 F.2d at 383 (C.A. 9 1959); *cert. denied*, 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959); *United States v. Stadium Apts., Inc., supra*, 425 F.2d at 363 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. Scholnick, supra*, 606 F.2d at 164 (C.A. 6 1979).

While Minnesota law provides a statutory right of redemption, that enables a party to regain property sold after foreclosure by paying the amount bid for the

property at the foreclosure sale within six months, 37 Minn.Stat.Ann. §§ 580.23, 581.-10, state redemption statutes are not applicable to foreclosure of federally held or insured loans under the National Housing Act. *United States v. Stadium Apts., Inc., supra*, 425 F.2d at 360 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. Thompson*, 438 F.2d 254, 257 (C.A. 8 1971); *United States v. Scholnick, supra*, 606 F.2d at 167 (C.A. 6 1979). Under federal law, no statutory right of redemption after foreclosure exists. *United States v. Scholnick, supra*, 606 F.2d at 167 (C.A. 6 1979). Numerous policy reasons have been advanced in support of this principle. *See United States v. Stadium Apts., Inc., supra*, 425 F.2d 358 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970). Paramount among these reasons are the differences in the law governing post-foreclosure redemption from state to state. It has been stated that it would be contrary to the teaching of case authority "to hold that there is a different federal policy in each state, thus making [federal agencies] 'subject to the vagaries of the laws of several states.'" *United States v. Stadium Apts., Inc., supra*, 425 F.2d at 364 (C.A. 9 1970), *cert. denied*, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

Therefore, the debtor's protection in this case is embodied in the common law doctrine of equity of redemption, applied in every jurisdiction, that permits the debtor, after default but prior to foreclosure, to perform his entire obligation under the mortgage and have title to his property restored free and clear of the mortgage. In the absence of an applicable statute extending the time, the equity of redemption is terminated by foreclosure and sale. *See* Osborne, Nelson & Whitman, *Real Estate Finance Law* § 7.1 (1979); 55 Am.Jur.2d, *Mortgages*, § 513. VHV may avail itself of the right to redemption at any time prior to foreclosure by paying the entire amount due on the notes and under the mortgages. Once the United States forecloses on the mortgage, VHV's right to regain the property is extinguished.

We conclude that HUD was under no obligation to accept VHV's offer of judgment and that VHV's remedy is the equity of redemption.

We have examined the authorities relied on by the appellee, and find nothing therein that supports the judgment for the appellee.

For the foregoing reasons, we reverse the decision of the District Court, and remand the action to the District Court for further proceedings consistent with this opinion.