**UNITED STATES of America, Plaintiff,**

**v.**

**MANSION HOUSE CENTER REDE-VELOPMENT COMPANY, et al., Defendants.**

**Nos. 79–616C(1) to 79–618C(1).**

United States District Court, E.D. Missouri, E.D.

Dec. 2, 1985.

As Amended Dec. 5, 1985.

Joseph B. Moore, Asst. U.S. Atty., Donald F. Flint, Area Counsel, Dept. of Housing and Urban Development, St. Louis, Mo., J. Christopher Kohn, and James G. Bruen, Jr., Attys., Civil Div., Dept. of Justice, Washington, D.C., for plaintiff.

James F. Gunn, Gunn & Gunn, Charles Alan Seigel, Stolar, Heitzmann, Eder, Seigel & Harris, John Michael Clear, Michael E. Kohn, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for defendants.

## MEMORANDUM

NANGLE, Chief Judge.

The United States, on behalf of the Secretary of Housing and Urban Redevelopment (HUD), filed these three actions for foreclosure of what is collectively known as the Mansion House Center.

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the documents in evidence, and the stipulations of the parties which are incorporated herein by reference, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure.

The Mansion House litigation spans numerous years and has resulted in a number of decisions from both this Court and the Eighth Circuit Court of Appeals. While many of the prior decisions involved complex issues and hard fought battles in the courtroom, the underlying facts and issues in this proceeding are relatively simple and straightforward. The parties have stipulated to all the necessary facts upon which this Court renders its decision. They are briefly reiterated here for purposes of information and clarity.

The Mansion House Center consists of three 28-story towers in downtown St. Louis, Missouri. The three towers are respectively owned by three separate limited partnerships (the Owner Partnerships), namely Mansion House Center Redevelopment Company (Center Tower), Mansion House Center North Redevelopment Company (North Tower) and Mansion House Center South Redevelopment Company (South Tower). The towers were constructed with proceeds from three mortgage loans made in 1964 to the respective Owner Partnerships. These loans totaled over $35 million and were insured by HUD pursuant to Section 220 of the National Housing Act. 12 U.S.C. § 1715K (1976). The projects soon began to experience financial difficulties and several modifications of the mortgage obligations were required. In 1971, however, additional modifications proposed by the Owner Partnerships were refused by the private lenders and the notes went into default. The private lenders subsequently assigned the notes, deeds of trust and security agreements to HUD. In return, HUD was required to pay mortgage insurance claims totaling approximately $35.3 million.

Following the assignment of the notes to HUD, a modification of each of the mortgages was agreed upon between HUD and the Owner Partnerships. A number of events occurred in the subsequent years, including the conversion of the South Tower to a motor hotel and the appointment of a receiver at the request of the United States. These events, while adding to the complexity of the situation, are not relevant to this decision. What is relevant and the parties have stipulated to, is that as of May, 1979 payments on the mortgage were not current. HUD rejected a financing program offered by the Owner Partnerships and in May, 1979, filed these three foreclosure actions. The uncontested evidence introduced at trial by the Government indicated that as of August 12, 1985 the amounts due on the mortgages were as follows: North Tower (FHA No. 085–32008) $16,196,724.30; Center Tower (FHA No. 085–32009) $18,159,863.33; and South Tower (FHA No. 085–32010) $18,069,574.47. The parties stipulated that the Government properly declared due and payable, the entire principal sum and accrued interest as provided in each note, deed of trust and security agreement. Finally, the parties stipulated that the United States is entitled to a separate judgment in each of the foreclosure cases, subject to the defendants' defense that HUD should be compelled to settle these cases under the terms contained in the August 18, 1982 settlement agreement, as amended.

The Secretary of HUD has very broad discretions to exercise in deciding whether to foreclose an insured mortgage upon default. This exercise of discretion is subject to judicial review under § 702 of the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq. United States v. Victory Highway Village,* 662 F.2d 488, 494 (8th Cir.1981). The party resisting foreclosure has the burden of introducing evidence of arbitrary or capricious action, abuse of discretion or failure to comply with applicable law. *Id.* The parties have stipulated that the notes are in default. Accordingly, this Court finds, based on the stipulations filed by the parties and the evidence adduced at trial that HUD's decision to foreclose on the properties is consistent with the national housing objectives which are stated in § 2 of the Housing Act, 42 U.S.C. § 1441 (1976).

Defendants have elected not to challenge the propriety of the Government's decision to foreclose on the Mansion House Towers. The Owner Partnerships have produced no evidence that HUD's action to foreclose is arbitrary, capricious, an abuse of discretion or a failure to comply with the applicable law. Instead, the Owner Partnerships assert the affirmative defense that HUD should be compelled to effectuate the settlement agreement, entered into by the respective parties on August 18, 1982. On April 4, 1985, this Court denied a motion filed on behalf of the Owner Partnerships to compel HUD to accept the terms of that settlement agreement. Defendants' appeal of the order was dismissed for lack of jurisdiction by the Eighth Circuit. *United States v. Mansion House Center North Redevelopment Company,* No. 85–1469–EM (May 23, 1985). This Court again rejects this affirmative defense for the reasons stated in the April 4, 1985 order.

The Owner Partnerships have also attempted to demonstrate that much of the litigation surrounding the Mansion House Properties has come to a close. As a result, the Owner Partnerships contend that HUD should now be forced to accept the terms of the settlement agreement. This Court disagrees. As this Court previously stated, the inquiry as to whether the titles were unmarketable must be made as of the time HUD decided to exercise its option to refuse to consummate the settlement agreement. Therefore, subsequent developments that allegedly remove some of the title problems associated with the properties in question are now irrelevant to the affirmative defense asserted by the defendants. Having rejected the sole defense asserted by the Owner Partnerships, this Court directs that the three towers collectively known as the Mansion House Center be sold according to the terms of the attached Order of this Court.

## ORDER

Pursuant to the memorandum filed herein this day,

**IT IS HEREBY ORDERED** that a judgment be and is entered in favor of the plaintiff in each of these three causes of action.

**IT IS FURTHER ORDERED** that the United States Marshal is authorized and directed to sell at public vendue between the hours of 9:00 a.m. and 5:00 p.m. at the east front door of the Court House (Civil Courts Building, Eleventh and Market Streets) in the City of St. Louis, Missouri, on such date as he shall determine but as expeditiously as practicable, all of the realty described in the Deeds of Trust for FHA No. 085–32008 (North Tower), FHA No. 085–32009 (Center Tower) and FHA No. 085–32010 (South Tower), to the highest bidder for cash. The following procedure shall be followed in selling said realty:

1. Said realty shall be offered for sale in bulk (as one unit).

2. Said realty shall then be offered for sale as three separate parcels. The higher of the total amounts bid under 1 and 2 above shall be the successful bid (or bids). Said sales shall be conducted on the date and time determined by the United States Marshal.

A sale shall be deemed to be for cash if the successful bidder or bidders shall deposit with the Marshal not later than 24 hours after the sale shall have been concluded, cashier(s) or certified check(s) payable to the Marshal in an amount not less than $300,000.00 for a bulk sale or $100,000.00 per parcel in separate sales and shall within 30 days after the conclusion of the sale have deposited with the Marshal cashier(s) or certified check(s) payable to the Marshal for the balance of the bid price.

The United States Marshal is authorized and directed to effect notice of the sale by publication once a week for at least four weeks prior to the sale in a newspaper regularly issued and of general circulation in the City of St. Louis, Missouri. HUD, at its discretion, may direct additional publication in other newspapers outside the St. Louis area.

Within five working days following conclusion of the sale, the Marshal shall file his report of the sale with this Court who will sua sponte and upon such notice as this Court deems appropriate, set the matter for confirmation of the sale. Upon confirmation of the sale and receipt by the Marshal of the full purchase price from the successful bidder the Marshal shall issue his certificate of sale and shall cause to be paid over to the Secretary of Housing and Urban Development, after deduction of all his costs and expenses of sale, such sum as shall be necessary to pay in full the aggregate of the mortgage hereinbefore determined by this Court and any excess funds shall be held by the Marshal subject to further order of this Court.

Should the net proceeds of the sale be insufficient to satisfy in full the aggregate mortgage indebtedness due and owing the United States of America, such net proceeds shall be paid to the Secretary of Housing and Urban Development and shall be applied by him in accordance with such further order as this Court may enter.

Upon receipt by the Secretary of payment of the sale proceeds he shall discharge the aggregate non-recourse mortgage indebtedness, subject only to the rights reserved to the Secretary under paragraph 17 of the Regulatory Agreements.

The Marshal shall make no representation as to title to the realty subject to the sale, but the quality and condition of title shall be at the sole risk of the successful bidder.