**UNITED STATES of America, Plaintiff,**

v.

**Harry and Adeline ELVERUD, and Farmers State Bank of Leeds, North Dakota, a corporation, Defendants.**

Civ. No. A2–85–99.

United States District Court,
D. North Dakota,
Northeastern Division.

June 30, 1986.

**693**

Rodney S. Webb, U.S. Atty., Fargo, N.D., for plaintiff.

Lowell P. Bottrell, Fargo, N.D., for Harry and Adeline Elverud.

Nicholas J. Spaeth, Atty. Gen., and Sarah M. Vogel, Asst. Atty. Gen., Bismarck, N.D., for amicus curiae State of N.D.

Neil F. Hartigan, Atty. Gen., Chicago, Ill., for amicus curiae State of Ill.

Thomas J. Miller, Atty. Gen., Des Moines, Iowa, for amicus curiae State of Iowa.

Robert T. Stephan, Atty. Gen., Topeka, Kan., for amicus curiae State of Kan.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Minn., for amicus curiae State of Minn.

## MEMORANDUM AND ORDER

BENSON, Senior District Judge.

The United States brought this action to recover amounts due and owing on three separate promissory notes secured by real estate mortgages. The government also requests the mortgages be foreclosed, the property sold as provided by law, the government mortgages be declared a senior and subsisting lien, and defendants be adjudged to have no right, title or interest in the mortgaged property beyond a 60 day right of redemption. Defendants Harry and Adeline Elverud admit to defaulting on the notes but contend they are entitled to a one year redemption period pursuant to North Dakota Century Code sections 28–24–01, 28–24–02 and 28–24–11. The Farmers State Bank of Leeds has not responded. The Elveruds and the United States have filed cross motions for summary judgment on the issue of the redemption period's length.

### Facts

There is no dispute as to the following facts. On September 30, 1977, Harry and Adeline Elverud (Elverud) executed two promissory notes. In the first promissory note Elverud agreed to repay the sum of $7,500 plus interest at 3% per annum. The payments were to be $60 on January 1, 1978, and $1,638.00 on the first of January for each year until principal and interest are fully paid except that the entire indebtedness, if not sooner paid, shall be due and payable 5 years from the date of the note. In the second note, Elverud agreed to repay to the United States $174,500 plus interest at 8% per annum. Pursuant to this promissory note, payment of $3,710.00 was to be made on January 1, 1978, and payments of $14,636 on the first of January of

each succeeding year until the principal and interest are fully paid, except that the entire indebtedness, if not sooner paid, shall be due and payable 40 years from date of this note. To secure these notes, the United States, acting through the Farmers Home Administration (FmHA), obtained a real estate mortgage on land located in Benson County.[1]

On November 28, 1977, Elverud executed a third promissory note wherein he agreed to repay the United States $7,500 plus interest on the unpaid balance of 3% per annum. Elverud was to make a $28.00 payment on January 1, 1978, and payments of $1,204 on the first of January of each year until the principal and interest are fully paid except that the entire indebtedness, if not sooner paid, is due and payable seven years from the date of this note. This note was secured by a real estate mortgage on the land described in footnote 1. This mortgage was recorded in the office of the Register of Deeds of Benson County, North Dakota, on November 28, 1973, in Book 154 of Mortgages, Page 611 as document number 158311. Elverud also executed and delivered a mortgage on the land described in Footnote 1 to the Farmers State Bank of Leeds on May 3, 1982. This mortgage is junior and subordinate to the mortgages held by the United States.

Elverud is in default on all three of the notes and has not paid the real estate taxes on the land when due and owing. The record indicates that as of April 22, 1985, there was due and owing on the first promissory note $14,537.74 in principal (including advance payments for taxes and miscellaneous fees) and interest of $1,011.73, with interest accruing at 3% per annum;

there remains due and owing on the second promissory note principal in the sum of $170,942.98 and interest of $102,984.48 with interest accruing at 8% per annum; and on the third promissory note there remains due and owing principal in the sum of $7,472 and interest of $1,658.16 with interest accruing at 3% per annum. The United States has accelerated the notes and declared the entire amount of the indebtedness due and owing.

On February 13, 1985, the United States served on Elverud by Certified Mail a "Notice of Intention to Foreclose Real Estate Mortgage." This document gave Elverud notice of the date of the mortgages, the description of the mortgaged property, and the amount due for principal and interest. Further, the notice informed Elverud that an action to foreclose the mortgages would be instituted unless the full amount of the indebtedness was paid within 30 days.

The United States filed this lawsuit on April 22, 1985, seeking a judgment for amounts due and owing on the notes, foreclosure of the real estate mortgages, costs and disbursements, and a judgment that the amounts due are superior, paramount and subsisting liens on the real estate described in Footnote 1. The United States also seeks judgment that Elverud and the Farmers State Bank of Leeds, a junior lienor, have no right, title or interest in the property, beyond a 60 day right of redemption. In their answer, the Elveruds denied all material claims and put the United States to its proof. They also filed a counterclaim asserting they are entitled to a one year redemption period. The Farmers State Bank of Leeds did not file an answer to the complaint.

---

1. The real estate mortgage was recorded in the office of the Register of Deeds of Benson County, North Dakota, on October 3, 1977, in Book 154 of Mortgages, Page 535 as document Number 157992. The mortgage covers the following real estate:

Parts of Lots Three (3) and Four (4), North of the Great Northern Railway (RW 2.87A) of Section Six (6), Township One Hundred Fifty-five (155), Range Sixty-Seven (67)
and
The East Half of the Southwest Quarter (E½ SW¼), Lots Three (3) and Four (4), the West

Half of the Southeast Quarter (W½SE¼) of Section Nineteen (19), Township One Hundred Fifty-Six (156), Range Sixty-Seven (67)
and
The Northeast Quarter (NE¼), The East Half of the Northwest Quarter (E½NW¼), Lots One (1) and Two (2), The East Half of the Southwest Quarter (E½SW¼), Lots Three (3) and Four (4) of Section Thirty-One (31), Township One Hundred Fifty-Six (156), Range Sixty-Seven (67), subject to right-of-ways and reservations of record.

The United States moved for summary judgment on all claims on January 29, 1986. Elverud does not oppose the motion for summary judgment as to the existence or validity of the promissory notes or real estate mortgages. He does, however, contest the United States request for a 60 day redemption period. Elverud filed a cross motion for summary judgment that the one year redemption period established by North Dakota Century Code Chapter 28–24–01 et seq. (Supp.1985) applies to this case.

### Discussion

■ Federal law governs questions involving the rights of the United States under nationwide federal loan programs. *United States v. Victory Highway Village, Inc.*, 662 F.2d 488, 497 (8th Cir.1981). However, the applicability of federal law does not automatically require the use of a single nationwide rule. Where statutes authorizing a federal lending program do not specify the appropriate rule of decision, federal courts are free to "fill the interstices of federal legislation according to their own standards." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727, 99 S.Ct. 1448, 1457, 1458, 59 L.Ed.2d 711 (1979). Thus, this court must determine whether to use the one year redemption period adopted by North Dakota as the federal rule of decision, or whether the court should use an equitable redemption period as suggested by the United States.

■ Federal programs that "by their nature are and must be uniform in character throughout the nation" require the establishment of uniform federal rules. *United States v. Yazell*, 382 U.S. 341, 354, 86 S.Ct. 500, 507, 508, 15 L.Ed.2d 404 (1966). However, when there is little need for a nationally uniform body of law, state law may be incorporated as the Federal Rule of Decision. *United States v. Kimbell Foods, Inc., supra*, 440 U.S. at 728, 99 S.Ct. at 1448. When determining whether to adopt the state law as the federal rule of decision or to establish a uniform federal law, the court should consider 1) whether there is a need for a nationally uniform body of law; 2) whether application of state law would frustrate specific objectives of federal programs; and 3) the extent to which application of a federal rule would disrupt commercial relationships predicated on state law. *Id.* at 728–29, 99 S.Ct. at 1448.

### 1. Necessity for Nationally Uniform Body of Law

In *United States v. Kimbell Foods, supra*, the United States Supreme Court determined that application of local laws would not impede the FmHA's processing of loans. The Court stated:

> Choosing responsible debtors necessarily requires individualized selection procedures, which the agencies have already implemented in considerable detail. Each applicant's financial condition is evaluated under rigorous standards in a lengthy process. Agency employees negotiate personally with borrowers, investigate property offered as collateral for encumbrances, and obtain local legal advice on the adequacy of proposed security arrangements. In addition, they adapt the terms of every loan to the parties' needs and capabilities. Because each application currently receives individual scrutiny, the agencies can readily adjust loan transactions to reflect state priority rules, just as they consider other factual and legal matters before disbursing Government funds. (Footnotes omitted).

440 U.S. at 732–33, 99 S.Ct. at 1448. Similarly, the Court of Appeals for the Eighth Circuit has stated "There is no need in fact for uniformity in Farmers Home Administration loan transactions throughout the United States." *United States v. Chappell Livestock Auction, Inc.*, 523 F.2d 840, 841 (8th Cir.1975). Where there is "little need" for uniformity, state law may provide the federal rule of decision. *U.S. v. Kimbell Foods, Inc., supra*, 440 U.S. at 728, 99 S.Ct. at 1448.

### 2. Interference with FmHA's Statutory Purpose.

The act authorizing FmHA loans, the Consolidated Farm and Rural Development

Act [2] was intended to provide more effective credit services to farmers. *See* 7 U.S.C. § 1921. Historically, the primary mission of the FmHA has been to assist farmers with limited assets to become established in agriculture and keep them in business through refinancing, restructuring debts and recouping losses covered by disasters. See H.R.Rep. No. 95–986, 95th Cong., 2d Sess., *reprinted in* 1978 U.S. Code Cong. and Ad.News 1106, 1127. A high priority is placed on keeping farmers in business. Agricultural Credit Act of 1978, Pub.L. No. 95–334, 92 Stat. 420, 429 (1978) (codified at 7 U.S.C. § 1921 note).

Application of a strict one year redemption period as provided in N.D.CENT. CODE 28–24–01 et seq. would not further the underlying policies of the FmHA. Potential negative effects of an extended post-sale redemption period include chilling bidding at the foreclosure sale, increasing the cost of foreclosure to the FmHA, increasing required administrative procedures and forcing the United States to buy the property at the sale and hold it until the redemption period expires and the United States can convey good title. *See United States v. Stadium Apartments, Inc.,* 425 F.2d 358, 365 (9th Cir.) *cert. denied sub nom Lynch v. United States,* 400 U.S. 96, 91 S.Ct. 187, 27 L.Ed.2d 926 (1970); *United States v. Curry,* 561 F.Supp. 429, 431 (D.Kan.1983).

Application of the state's one year period of redemption could also interfere with the United States' overriding interest in protecting the funds of the United States and securing federal investments. *United States v. Victory Highway Village, Inc.,* 662 F.2d 488, 497 (8th Cir.1981); *United States v. Scholnick,* 606 F.2d 160, 164 (6th Cir.1979). Use of the one year redemption period set out in N.D.CENT.CODE ch. 28–24 would delay the government's ability to obtain, resell, or put into use lands obtained through foreclosure. It could also

result in the FmHA commencing foreclosure proceedings at an earlier juncture of the farmer's default or depriving other farmers of FmHA monies which are tied up in loans to farms that are no longer viable.[3]

### 3. Disruption of Commercial Relationships Predicated on State Law

The final consideration is the extent to which application of a federal rule would disrupt commercial relationships based on state law. In this case, application of an equitable period of redemption would not interfere with the commercial relationships under state law. The loan transaction between Elverud and the FmHA does not interfere with commercial relationships of third parties. Although the redemption period affects the rights of junior lien holders, these junior lien holders, for the most part, should be aware of the FmHA's lien.

■ After considering the three factors set out in *Kimbell Foods,* this court finds the state redemption law of North Dakota should not apply. *Cf. United States v. Larson,* 632 F.Supp. 1565 (D.N.D.1986). Rather, the court will establish an equitable period for redemption of foreclosed mortgages based on the particular facts in each case. This approach allows the court to impose a relatively short redemption period where there is little likelihood the borrower could redeem or where the debt is greatly undersecured. Conversely, where an extended redemption period would provide the borrower an opportunity to refinance the obligation or prevent sale of the land at an artifically low price, the court could allow a longer redemption period. Accordingly, the court finds that an equitable period of redemption to commence running following the foreclosure sale will be applied to foreclosures of FmHA loans.

■ In this case Elverud has made only sporadic payments on the notes held by FmHA. No payments have been made for

2. Public Law No. 870128 Title III, § 301(b), 75 Stat. 307 (1961) (Codified at 7 U.S.C. §§ 1921–1992).

3. The policies listed in support of the state's one year redemption period are that the redemption period protects junior lienors and prevents sale

of the land at artifically low prices. *See Mehlhoff v. Pioneer State Bank,* 124 N.W.2d 401, 407 (N.D.1963). These policies are not defeated by imposition of a flexible equitable period of redemption.

over eight years. Nor have the Elveruds attempted to use administrative procedures to restructure their debt or appeal the agency decision to foreclose. Under these circumstances, a 60 day redemption period adequately protects the interest of the borrowers and junior lienor while still allowing the FmHA to move expeditiously to foreclose its mortgage.

IT IS ORDERED the United States' motion for summary judgment is granted, and Defendant Elveruds' motion for summary judgment is denied. The United States shall submit a proposed judgment by July 15, 1986. Elverud shall have until July 25, 1986, to respond to or object to the proposed judgment. The court will then enter judgment in accordance with this order.