UNITED STATES of America,
Plaintiff-Appellee,

Huron Towers, Inc., Defendant-Appellee,

v.

Morton L. SCHOLNICK and Seymour Dunitz, Third Party Defendants-Appellants.

No. 77–1594.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1978.

Decided Oct. 2, 1979.

Robert V. Seymour, Southfield, Mich., for Scholnick.

James K. Robinson, U. S. Atty., Samuel J. Behringer, Jr., Asst. U. S. Atty., Detroit, Mich., Richard M. Selik, Levin, Levin, Garvett & Dill, Southfield, Mich., for the U. S.

Before WEICK and MERRITT, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

HARRY PHILLIPS, Senior Circuit Judge.

Appellants Morton L. Scholnick and Seymour Dunitz appeal from the judgment of the district court ordering foreclosure on mortgages held by the Department of Housing and Urban Development (HUD) on certain property located in Ann Arbor, Michigan, known as Huron Towers. The district court ordered foreclosure by judicial sale. It was further ordered that all other claims are deemed foreclosed and subordinate and "that no party . . . [shall enjoy] any right . . . of redemption. . . . ." The effect of the court's judg-ment was to extinguish a mortgage that appellants held on the property.

We affirm.

I

The history of this protracted litigation spans many years and, as the Government has characterized, "although at first blush . . . [it involves] nothing more than a simple judicial foreclosure, this lawsuit de-veloped into a bitter contest on the issue and fostered many side issues."

In 1959, appellants and a third party, James E. Brophy, formed a corporation called Huron Towers, Inc. (Huron Towers) for the purpose of constructing a thirteen story, twin tower, 360 unit apartment com-plex to be known as Huron Towers (the property). Huron Towers negotiated loans from Manufacturers National Bank of De-troit to finance the construction of the apartment complex.

Pursuant to § 207 of the National Hous-ing Act, as amended, 12 U.S.C. § 1713, and the applicable regulations promulgated thereunder, 24 C.F.R. §§ 207 et seq., HUD agreed to insure the loans from Manufac-turers National to Huron Towers. Accord-ingly, mortgage documents were prepared (on HUD forms) in favor of the bank. The mortgages were recorded in Michigan on May 1, 1959.

Manufacturers National subsequently as-signed its entire interest in the property to the Michigan State Administration Board, trustee of the Michigan State Employees' Retirement Fund, which, in turn, loaned additional funds to Huron Towers. In 1966, the State Board assigned its interest in the property to HUD. It became apparent by 1966 that Huron Towers was unable to op-erate the property at a profit, in spite of the fact that efforts had been made by the lenders to relieve Huron Towers from some of the burden of the debt service by modifi-cation and adjustment of the terms of the mortgages.

In September 1967, Huron Towers ac-knowledged that it was in arrears on the mortgages. In an effort to put the proper-

ty on a sound financial footing, HUD and Huron Towers entered into a Forebearance Agreement, in which HUD agreed not to pursue its legal remedies and Huron Towers agreed to a modified mortgage payment schedule. By the terms of the agreement, appellant Scholnick was prohibited from selling his controlling interest in the common stock of Huron Towers without approval from HUD.

In 1968, after obtaining HUD's approval, appellants agreed to sell the common stock they held in Huron Towers to the Michigan Education Home Association (MEHA). The purchase agreement provided, *inter alia*, that MEHA and Huron Towers, under the ownership of MEHA, would execute joint promissory notes in favor of appellants to be secured by a mortgage on the property. Appellants also were to be paid a portion of the purchase price in cash. The purchase agreement was consummated and, on January 30, 1969, Huron Towers executed the mortgage, which was recorded in Michigan on February 4, 1969.

HUD commenced the present action on December 6, 1973, averring that the mortgages it held on the property had been in default since 1971, and seeking judgment against Huron Towers together with an order foreclosing the mortgages. Huron Towers and appellants were named as defendants in the action.

All parties appeared and answered the complaint. A number of defenses, cross-claims and counterclaims were asserted. Thereafter, the district court granted HUD's request for appointment of a receiver to manage and preserve the property pending outcome of the proceeding.[1] With the consent of the parties, the district court also established a discovery cutoff date of December 30, 1974.

In 1976 HUD and Huron Towers agreed to settle their dispute over the property. Accordingly, they filed a joint motion for entry of a consent decree of foreclosure.

Accompanying this motion was a document entitled Consent Decree of Foreclosure and Sale signed by counsel for both the Government and Huron Towers. The decree provided, *inter alia*, that the property should be sold at public auction, that the United States would relinquish any claims it may have had against MEHA, its officers, and agents of Huron Towers, including the right to sue for a deficiency judgment after sale of the property, and that Huron Towers also would relinquish any claims it may have had against HUD.

Appellants filed a brief in opposition to the consent decree, arguing that the decree was defective under Michigan law, that it denied appellants due process, that it had the effect of extinguishing and releasing the HUD mortgages, thereby precluding foreclosure by HUD, and that it had the further effect of extinguishing the HUD mortgages, leaving appellants as the only mortgagees on the property. The district court heard argument on the motion and then took the entire matter under advisement.

On December 28, 1976, the district court granted the motion for entry of a consent decree, and ordered that "the Consent Decree of Foreclosure and Sale shall be forthwith presented to this Court with notice to all parties." Pursuant to the terms of the court's order, HUD presented the consent decree and again moved for judgment. Appellants filed a brief in opposition to the decree; rebuttal briefs were filed by appellees. Appellants also filed a motion requesting a rehearing on the district court's order of December 28, 1976.

On January 27, 1977, the motion for entry of the consent decree was argued before the district court. Appellants reiterated their previous objections to the consent decree. Appellants further alleged that although their mortgage was second in time to that of HUD, there had been an agreement between HUD and appellants whereby HUD

1. Some time later the district court removed the receiver it initially had appointed and named a new one in his stead. That decision precipitated an appeal to this court. We af-

firmed the decision of the district court in an unpublished order. *United States v. Huron Towers, Inc.,* (6th Cir. 1975), 516 F.2d 902.

was to protect the interests of appellants in the event of foreclosure. Appellants offered no evidence in support of this position, but suggested that witnesses could be produced who would be able to support this allegation. In response to this "new argument," the district court adjourned the hearing in order to allow appellants time to produce any evidence that they had concerning the priorities to be accorded the mortgages in question.

On March 15, 1977, the district court entertained further argument on the issue of the consent decree. During that hearing, appellants were invited to produce whatever evidence they had concerning the alleged agreement with HUD and the priorities to be accorded the mortgages. Appellants offered no evidence in support of their allegation and, at the conclusion of argument, the district court again took the matter under advisement.[2]

On May 19, 1977, the district court entered a Judgment of Foreclosure and Sale in which it found (1) that HUD had a prior and subsisting lien against the property; (2) that all other claims were subordinate and foreclosed; (3) that HUD was due $7,844,-841.60, together with interest; and (4) that there was no right of redemption. The judgment further confirmed the details of the consent decree between HUD and Huron Towers and ordered the United States Marshal to place the property for sale by public auction, pursuant to the provisions of 28 U.S.C. §§ 2001 *et seq.* HUD was the sole bidder at that auction and purchased the property for approximately 90 per cent of the value of its mortgages. There is no issue that the sale price was unfair or inequitable. The district court confirmed the sale on September 13, 1977. This appeal followed.

## II

We note, initially, that federal law, not Michigan law, governs the rights and liabilities of the parties. *United States v. Helz,* 314 F.2d 301, 303 (6th Cir. 1963). *See also United States v. Kimball Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979). If the law of Michigan is to have any application in this appeal, it is only because the National Housing Act or the mortgage documents require it, or because this court finds that applying local law will further federal policy and interests. *United States v. View Crest Garden Apts., Inc.,* 268 F.2d 380, 382 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). Where there is no federal law in point, this court may adopt state law or may fashion the governing rule of law, whichever will serve best to protect the security of federal investments. *Helz,* 314 F.2d at 303; *United States v. Stadium Apts., Inc.,* 425 F.2d 358, 360 (9th Cir.), *cert. denied sub nom., Lynch v. United States,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970).

Moreover, in any consideration of remedies available upon default of a federally held or insured loan, federal interest predominates over state interest. *Oglethorpe Co. v. United States,* 558 F.2d 590, 594–95 (Ct.Cl.1977); *Helz, supra,* 314 F.2d at 303; *View Crest Garden Apts., Inc., supra,* 268 F.2d at 383. This rule obtains because of an overriding federal interest in protecting the funds of the United States and in securing federal investments, thereby promoting the purposes of the National Housing Act. *Stadium Apts., Inc., supra,* 425 F.2d at 361. Local rules that limit the effectiveness of remedies available to the United States are not to be adopted. *View Crest Garden Apts., Inc., supra,* at 383.

We find nothing in this record to indicate that the parties to the mortgages that were assigned to HUD intended Michigan law to govern in the event of default

---

**2.** Prior to and following entry of the order granting the motion for entry of the consent decree, appellants filed a number of motions. Appellants sought to add MEHA as a defendant, the production of documents from HUD, and leave to file an amended answer, cross-claim and counterclaim. While the district court never ruled upon these motions, their significance was rendered moot by the Judgment of Foreclosure and Sale entered May 19, 1977.

and foreclosure. The mortgages were insured under § 207 of the National Housing Act and were executed on HUD forms. Furthermore, the mortgages make no reference to Michigan law. *Cf. United States v. Johansson*, 467 F.Supp. 84, 85 (D.Me.1979), where mortgage documents referred to local law. Clearly, there are no facts that would suggest that the parties intended Michigan law to control the transaction. Accordingly, it is against the backdrop of federal law that this court reviews the arguments of the parties to this appeal.

### III

Appellants contend that the judgment of the district court denied them due process of law. Specifically, they assert that they were unconstitutionally denied the right to a trial as the result of a consent decree between HUD and Huron Towers, to which they were not made a party.

 A suit to foreclose a mortgage is a proceeding to determine the existence, extent and priority of a mortgage lien and to obtain the sale of the real property pledged to secure its satisfaction. *See generally* 55 Am.Jur.2d, *Mortgages* §§ 533 *et seq.* As a general rule, a junior lienor or mortgagee is not a necessary party to a foreclosure proceeding in order to confer jurisdiction upon a court to enter a judgment foreclosing a mortgage. *See* 55 Am.Jur.2d, *Mortgages* § 572. A junior mortgagee is made a party to a foreclosure proceeding in order to determine his legal rights in the mortgaged property, to bind him to the decree of the court, G. Osborne, *Mortgages* § 321 (1951), and to cut off his equity of redemption, or right of statutory redemption.[3] *See generally* 55 Am.Jur.2d, *Mortgages*, §§ 510–32, 572, 877. Accordingly, a junior mortgagee is a limited participant in a foreclosure action.

 Appellants were properly made parties to the foreclosure action. As such, they were given every opportunity to participate in the litigation, consistent with their interest therein. We cannot agree, however, that this interest included a right to a "full blown" trial where the mortgagor and the principal mortgagee did not dispute the material facts necessary to resolution of the case.

Trial of this action was obviated by the fact that HUD and Huron Towers agreed to resolve their dispute through entry of a consent decree. From the pleadings and courtroom representations of HUD and Huron Towers it is clear that the existence of the debt, the identity of the debtor, the fact of default, and the right of HUD to foreclose were not in dispute between the parties. Neither did appellants offer any evidence to dispute the fact that the HUD mortgages were prior in time to their own, which was the only question of fact in which appellants were directly involved.

Appellants suggest that because they were not made a party to the consent decree, they were denied due process. However, the only necessary parties to the consent decree were HUD and Huron Towers because the decree concerned matters relevant to disputes arising from the HUD mortgages on the Huron Towers property. Allowing appellants to participate in the consent decree was not necessary to protect their due process rights. Appellants' only rights as junior mortgagees of the property were sufficiently protected by their joinder as parties to the foreclosure action.

No doubt appellants would have preferred to see Huron Towers maintain its initial position in opposition to the complaint of HUD. However, we know of no rule that permits a second mortgagee to step into the shoes of the mortgagor and assert his defenses when the mortgagor agrees not to dispute the claims of the first mortgagee. That certain legal conse-

---

**3.** The equity of redemption, which permits the debtor or junior mortgagee to make current or discharge the indebtedness after default but prior to foreclosure, is to be distinguished from a statutory right to redeem, which enables a party to regain property sold after foreclosure. The former is a common law doctrine, while the latter is a creature of statute.

quences adverse to appellants resulted from the election of Huron Towers not to contest the right of HUD to foreclose in no way supports the argument that appellants were denied due process.

To the contrary, appellants were allowed to oppose entry of the consent decree. Their opposition, raising legal objections to the decree, was considered by the district court and rejected. Even after the court order granting the motion of appellees to enter the consent decree, appellants were given an opportunity to contest the terms of the decree. Appellants filed a second brief in opposition to the decree and the district court heard extensive argument on this issue. Finally, when it became apparent that appellants questioned the legal priority of the HUD mortgages, the district court adjourned the hearing to allow appellants to gather and present any proofs they could find to support their position. We conclude that appellants were not deprived of due process.

## IV

Appellants contend that the judgment of the district court violated Fed.R.Civ.P. 52(a) because the court failed to make findings of fact and because there was no evidence upon which findings could have been based.

■ Rule 52(a) requires findings of fact only where an action is "tried upon the facts without a jury." The judgment of the district court did not follow a trial upon the facts. Rather, it incorporated the terms of the consent decree between HUD and Huron Towers, and stated the legal consequences flowing from that agreement. The judgment is, therefore, in the nature of a judgment by consent, *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir. 1973), and its entry is based upon the inherent power of the federal courts summarily to enforce settlement agreements. As we have already observed, that certain legal consequences adverse to appellants flowed from the consent agreement

does not support the argument that the judgment is improper.

Appellants also object to specific portions of the judgment, arguing that it is fatally defective for a host of reasons. We have considered fully appellant's arguments in opposition to the judgment and find them to be without merit. We find it necessary to comment on only two of the specific objections.

■ Appellants contend that the finding of the district court that HUD "has a first and prior subsisting lien upon [the property] . . . and that all other claims are deemed foreclosed and subordinate" is not supported by substantial evidence. We do not agree.

■ Appellants admitted that the mortgages held by HUD were prior in time to the mortgage they held. It is clear that, absent a controlling statute, the federal rule for determining priority between federal and state mortgages is "first in time, first in right." *Rankin v. Scott*, 25 U.S. (12 Wheat.) 177, 179, 6 L.Ed. 592 (1827); *Howard v. Railway Co.*, 101 U.S. 837, 845, 25 L.Ed. 1081 (1897); *Chicago Title Insurance Co. v. Sherred Village Association*, 568 F.2d 217, 219 (1st Cir. 1978), *petition for cert. pending*, (U.S. No. 77–1611). *Cf. Kimball Foods, Inc.*, 440 U.S. at 729–33, 99 S.Ct. at 1459–61 in which the Supreme Court adopted nondiscriminatory state priority rules with respect to certain Small Business Administration and Farmers Home Administration loan programs. While appellants alleged the existence of an agreement with HUD which altered the priorities of the respective mortgages, no evidence was produced to support that allegation. Accordingly, the district court was correct in concluding that the HUD mortgages had priority over the mortgage held by the appellants.

■ Appellants also contend that the judgment is defective because it cut off their post-foreclosure right of redemption

provided by Michigan law. The simple answer to this argument is that under federal law no such right of redemption exists. *Stadium Apts., Inc., supra,* 425 F.2d 358, 360 (9th Cir.), *cert. denied,* 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970); *United States v. West Willow Apts., Inc.,* 245 F.Supp. 755, 757–58 (E.D.Mich.1965).[4]

### V

Finally, appellants contend that foreclosure was not proper in this case because, under Michigan law, the consent decree amounted to a deed in lieu of foreclosure which merged the rights of the mortgagor and mortgagee, and so extinguished HUD's mortgages by operation of law. *Vollner v. Coenis,* 309 Mich. 319, 15 N.W.2d 654 (1944). Appellants further contend that the consent decree released and discharged the debt of Huron Towers, thereby extinguishing the HUD mortgages. *Ladue v. Detroit & Milwaukee R. Co.,* 13 Mich. 380 (1865).

We need not decide whether appellants' statement of Michigan law is correct. In the case at bar, it is clear that federal interests override Michigan law. In § 207(k) of the National Housing Act, 12 U.S.C. § 1713(k) Congress has specifically identified the remedies available to HUD in the event of a default on a federally held or insured mortgage. Section 1713(k) provides that HUD may acquire possession of and title to mortgaged property by a "voluntary conveyance" in extinguishment of the mortgage indebtedness or by purchase at a public sale.

▆ The term "conveyance", as used in § 1713(k), must be given its ordinary meaning so as to facilitate a uniform interpretation of the National Housing Act, and to avoid the "vagaries of state law." *Oglethorpe Co., supra,* 558 F.2d at 595 (citing cases). A "conveyance" ordinarily involves a written instrument executed with proper formalities by which some estate or interest in land is transferred from one person to another, for example, a deed or mortgage. Black's Law Dictionary, 402 (5th ed. 1979). This definition of the term "conveyance" is supported by the language of § 1713(k). The voluntary conveyance contemplated under the statute must, therefore, vest HUD with possession of and title to the mortgaged property.

▆ We do not believe this consent decree qualifies as a voluntary conveyance in lieu of foreclosure. The decree in no way purports to transfer title of the property to HUD, nor does it surrender possession of the premises to HUD. The decree was executory in nature and, in the context of this case, no legal merger of mortgage and fee interest could have occurred until the property was sold, the proceeds of the sale distributed, the sale confirmed, and a deed to the property delivered. Therefore, the district court acted properly in ordering sale of the property in accordance with the alternative remedy provided in § 1713(k).

The court has considered the other grounds asserted by appellants for reversal of the judgment of foreclosure and sale and finds them to be without merit.

The judgment of the district court is affirmed.

---

4. In their reply brief, appellants seem to suggest that their right of redemption exists by virtue of a representation made by counsel for HUD. This representation cannot be viewed as legal authority controlling on this court, nor do we view it as a waiver of the no-redemption rule.