**Robert P. ANSCHUTZ, Jr., et al.**

v.

**RADIOLOGY ASSOCIATES OF MANSFIELD, INC., et al.**

No. 5:92 CV 0096.

United States District Court, N.D. Ohio, E.D.

July 23, 1993.

Larry L. Inscore, Michael L. Inscore, Inscore, Rinehardt, Whitney & Enderle, Mansfield, OH, for plaintiffs.

William D. Bonezzi, Thomas H. Terry, III, Robert C. Seibel, Jacobson, Maynard, Tuschman & Kalur, Cleveland, OH, for defendants Radiology Associates of Mansfield, Inc. and James D. Curry, M.D.

Gayle E. Arnold, William A. Davis, Jacobson, Maynard, Tuschman & Kalur, Colum-

bus, OH, for defendants Pediatric Academic Ass'n, Inc. and Hugo Juhling McClung, M.D.

Gregory D. Rankin, Lane, Alton & Horst, Columbus, OH, for defendants Radiology, Inc., Richard L. Klecker, M.D. and Thomas v. Lloyd, M.D.

Wayne P. Hohenberger, Kenneth R. Beddow, Sauter & Hohenberger, Mansfield, OH, for defendant Mansfield Gen. Hosp.

Alan T. Radnor, Ellen L. Seats, Vorys, Sater, Seymour & Pease, Columbus, OH, for defendant Children's Hosp., Inc.

## MEMORANDUM OPINION AND ORDER

DOWD, District Judge.

### I. INTRODUCTION.

This personal injury case, based on diversity jurisdiction, is proceeding on the plaintiffs' second amended complaint which alleges that Children's Hospital ("Children's") located in Columbus, Ohio, the Mansfield General Hospital, and a number of physicians and corporations engaged in providing medical services negligently treated the plaintiff Brian M. Anschutz resulting in the surgical resection of his small bowel with accompanying catastrophic on-going medical and nutritional expenses leading plaintiffs to claim damages in the sum of forty five million dollars.

The defendant Children's filed a motion for summary judgment on February 4, 1993 in reliance upon the proposition that the defendant radiologists, Richard L. Klecker, M.D. and Thomas V. Lloyd, M.D., who worked at Children's were not employees of Children's. Building on that fact, Children's argues that any liability based on agency by estoppel was, under the facts of this case, barred by the fourth syllabus in the decision of the Ohio Supreme Court in *Albain v. Flower Hospital,* 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990).[1]

While the motion for summary judgment was under review by this Court, counsel for the plaintiffs and counsel for Children's be-

gan the exchange of letters and also engaged in discussions in an attempt to settle the case as between the plaintiffs and Children's.

On May 26, 1993 the Court received and docketed a letter from plaintiffs' counsel, Michael Inscore, which reported as follows:

Plaintiffs verbally agreed to a settlement figure with Defendant Children's Hospital. However, this was done without the knowledge that the Ohio Supreme Court had recently certified the record in the case of *Clark v. Southview Hosp. & Family Health Ctr.* [1992 WL 211939], 1992 Ohio App. Lexis 4516 (Montgomery County 1992); *mot. cert. granted,* 65 Ohio St.3d 1498 [605 N.E.2d 951]. (Children's Hospital relied upon the appellate level decision in *Clark* in its memoranda filed in support of its motion for summary judgment.)

Plaintiffs believe the verbal settlement is not enforceable due to the parties' mutual mistake and for the independent reason that the settlement was considered to be contingent upon the signing of a written settlement document.

Based upon the foregoing, the summary judgment motion of Children's Hospital is not moot.

As a point of clarification, Mansfield General Hospital's motion remains pending as well.

On June 7, 1993, Children's filed a motion (docket no. 127) to enforce the settlement between the parties. Plaintiffs' counsel filed a brief in opposition to the motion and requested an evidentiary hearing. On July 19, 1993 the Court conducted an evidentiary hearing on Children's motion.

The motion is denied. The analysis in support of the Court's ruling follows.

### II. FACT FINDINGS.

1. In its motion for summary judgment filed on February 4, 1993, Children's initially

---

1. The fourth syllabus reads as follows:
   A hospital may, in narrowly defined situations, under the doctrine of agency by estoppel, be held liable for the negligent acts of a physician to whom it has granted staff privileges. In order to establish such liability, a plaintiff must

   show that: (1) the hospital made representations leading the plaintiff to believe that the negligent physician was operating as an agent under the hospital's authority, and (2) the plaintiff was thereby induced to rely upon the ostensible agency relationship.

noted that the liability asserted against Children's was vicarious and based upon the claim that Children's was responsible for the negligent conduct of the defendant radiologists Richard L. Klecker, M.D., and Thomas V. Lloyd, M.D., who performed their relevant services at Children's. In response to that claim, Children's established that Klecker and Lloyd were not employees, but were radiologists with staff privileges providing services pursuant to a contract between Children's and Radiology, Inc. of Columbus.

Upon that factual predicate, Children's relied upon the Ohio Supreme Court decision in *Albain v. Flower Hospital, supra.* Additionally, Children's included as Exhibit C to its motion the unpublished decision in *Clark v. Southview Hospital and Family Health Center,* 1992 Ohio Appeal, Lexis 4516 and decided on September 2, 1992 in which *Albain v. Flower Hospital, supra,* was cited and relied upon in determining that agency by estoppel as limited by the fourth syllabus of *Albain v. Flower Hospital, supra,* was not established.

2. On January 20, 1993, the Ohio Supreme Court granted the motion to certify the record in *Clark v. Southview, supra.* The fact of the granting of the motion to certify was published in the Ohio Bar Journal of February 8, 1993.[2]

3. On March 2, 1993, plaintiffs' counsel Michael Inscore communicated by letter with Alan J. Radnor, counsel for Children's, and proposed a settlement of $75,000 (Children's Exhibit 1).

4. On March 12, 1993, Mr. Inscore sent a letter to all counsel of record and by way of a postscript to Mr. Radnor increased the demand for settlement to $250,000 and indicated that the demand would increase to $2,000,000 in the event Children's motion for summary judgment was denied (Children's Exhibit 2).

5. On March 15, 1993 the plaintiffs filed an extensive brief in opposition to Children's motion for summary judgment which discussed at great lengths the decision in *Albain, supra,* and also the decision in *Hannola v. Lakewood,* 68 Ohio App.2d 61, 22 O.O.3d 63, 426 N.E.2d 1187 (1980) to which reference is made in the *Albain* decision and argued that the *Albain* decision with its reference to agency by estoppel should be limited to the facts of *Albain* and not apply to this case. Additionally, counsel for the plaintiff discussed the decisions of courts in other jurisdictions where agency by estoppel has been applied to hospitals in a more expansive fashion than permitted by *Albain.*

6. On March 22, 1993, Children's filed a reply memorandum in support of its motion for summary judgment in which counsel for Children's again implored this Court to follow the law of Ohio, not the law of other jurisdictions, and again emphasized the recent decision in *Clark v. Southview Hospital and Family Health Center, supra,* without noting that the Supreme Court of Ohio, as indicated in 65 Ohio St.3d 1498, 605 N.E.2d 951, first published in the Ohio State Bar Journal on February 8, 1993, had voted to certify in *Clark,* thus arguably bringing into question the continuing viability of the fourth syllabus in *Albain.*

7. The Ohio Supreme Court has published rules for the Reporting of Opinions and Rule No. 2(G)(3) provides: "A party who cites an unpublished opinion shall attach a copy of the opinion to his brief or memorandum and indicate *any disposition* by a superior appellate court of any appeals therefrom *known after diligent search.*" (Emphasis added).

8. Between the receipt of the March 12, 1993 letter and April 5, 1993, Inscore and

---

2. The Ohio Supreme Court consists of seven justices. A motion to certify requires the affirmative vote of four justices. The record of the granting of the motion does not disclose the names of the four justices voting to certify, but does demonstrate that Chief Justice Thomas Moyer, Associate Justice Craig Wright, and Associate Justice Paul Pfeifer dissented. If all of the sitting justices participated in the decision, it means that Justices Douglas, Resnick, A.W.

Sweeney and F.E. Sweeney voted to certify. In the *Albain* case, Justice Douglas did not participate. Chief Justice Moyer, Justice Wright and Justice A.W. Sweeney concurred in *Albain.* The elections of Justices Resnick and F.E. Sweeney to the Ohio Supreme Court followed *Albain.* As a consequence, there is a rational basis for concluding that the limiting provisions of the fourth syllabus of *Albain* on the application of agency by estoppel are in jeopardy.

Radnor had oral discussions regarding the plaintiffs' position with respect to settlement.

9. On April 5, 1993, Michael Inscore sent a letter to Radnor and demanded settlement for the sum of $100,000 (Children's Exhibit 3).

10. On April 6, 1993, Radnor responded to the April 5, 1993 settlement demand with a counter offer of $30,000 which indicated that the offer would remain open until April 8, 1993 and it was contingent upon receiving appropriate releases and indemnities to completely remove Children's from the case. The offer was also made contingent upon no ruling by the Court before April 8, 1993 on the pending motion for summary judgment (Children's Exhibit 4).

11. On April 8, 1993, Inscore sent another letter to Radnor and responded to the offer of $30,000 with a demand of $70,000 with the caveat that the offer was void in the event of a journalization of a decision denying summary judgment to Children's (Children's Exhibit 5).

12. By letter dated April 8, 1993, Radnor responded to Inscore's letter of April 8, 1993 with a counter offer of $40,000 and contingent upon receiving appropriate releases and indemnities with the indication that the offer remain open until Monday, April 12, 1993 or at such time as there is a ruling by the Court on the motion of Children's for summary judgment, whichever was sooner (Children's Exhibit 6).

13. After the Radnor letter of April 8, 1993 was received by Inscore, Inscore and Radnor had additional conversations regarding settlement in which $50,000 was settled upon as the monetary consideration for the purpose of settlement.

14. On April 13, 1993, Radnor wrote a letter to Inscore which states in its entirety with the appropriate reference to this case as follows:

This is to confirm the captioned case has been settled for $50,000 *with the understanding that we will receive the appropriate indemnities and release to be fully removed from this case.* Pursuant to our discussions I will order a check and prepare the appropriate settlement papers.

We will advise the Court that we have settled this case, but that the case continues against all other parties. (Emphasis added).

Children's Exhibit 7.

15. On April 15, 1993, Radnor sent an additional letter to Inscore which stated in its entirety as follows:

The Hospital is agreeable to drafting the check in trust as requested. However, they would like to have instructions from your clients to do so. I have, therefore, enclosed a letter to be signed by your clients. I also enclose our release so that you can send them all down together.

If this procedure is agreeable, I will have the check issued as soon as I receive the letter back from your clients. If not, just tell me and I will have the check drafted to you and your clients.

Give me a call if you have any questions.

Children's Exhibit 9.

16. On April 20, 1993, Inscore wrote a letter to Radnor (Children's Exhibit 10) and acknowledged receipt of the letter of April 15, 1993 and raised a series of objections to the document previously sent to Inscore and titled *"CONFIDENTIAL RELEASE AND COVENANT NOT TO SUE AND TO CEASE SUING"* and identified as Children's Exhibit 17. One of the disputes related to the language of the proposed indemnity agreement. The initial release included a provision regarding indemnity which stated:

It is further agreed and understood that Robert P. Anschutz, Jr. and Sandra K. Anschutz, individually and as parents/next friends/natural guardians of Brian M. Anschutz, and Brian M. Anschutz, shall indemnify THE CHILDREN'S HOSPITAL, its officers, agents and employees and *hold them harmless for loss or liability, including court costs and attorney fees, on account of any claims,* demands, rights, or causes of action or loss to any other person, firm, association or corporation asserting any independent or derivative claim or right, whether by common law, statute, contract or otherwise, including without limitation actions for contribution, indemnity, or subrogation for or on account of

**1342**

the injuries, losses and damages which are the subject matter of this Covenant. (Emphasis added).

Children's Exhibit 17 at 2 & 3.

17. Thereafter, Inscore and Radnor's associate Ellen L. Seats, engaged in extensive conversation regarding Inscore's April 20, 1993 objections.

18. On May 7, 1993 Inscore received a letter (Children's Exhibit 12) which enclosed a check drawn in the sum of $50,000 and payable to the plaintiffs and their attorney Michael Inscore. The letter also included the document entitled *"RELEASE AND COVENANT NOT TO SUE AND TO CEASE SUING"* which is Children's Exhibit 11. The "Release and Covenant Not to Sue and to Cease Suing" contained a revised indemnity provision which stated as follows:

It is further agreed and understood that Robert P. Anschutz, Jr. and Sandra K. Anschutz, individually and as parents/next friends/natural guardians of Brian M. Anschutz, and Brian M. Anschutz, shall indemnify THE CHILDREN'S HOSPITAL OF COLUMBUS, its officers, agents and employees and *hold them harmless for loss or liability, including court costs and provide and pay for a legal defense upon reasonable notice of a claim and reasonable cooperation of THE CHILDREN'S HOSPITAL OF COLUMBUS* in defense of any claim on account of any claims, demands, rights, or causes of action or loss to any other person, firm, association or corporation asserting any independent or derivative claim or right, whether by common law, statute, contract or otherwise, including without limitation actions for contribution, indemnity, or subrogation for or on account of the injuries, losses and damages which are the subject matter of this Covenant. (Emphasis added).

Children's Exhibit 11 at 2.

The revised indemnity provisions did not address or decide whether the plaintiff or Children's would select the lawyer to represent Children's in the event the indemnity provisions became applicable.

19. As of May 7, 1993, none of the lawyers engaged in the negotiations, Inscore, Radnor, or Seats, knew that the Ohio Supreme Court had granted the motion to certify in *Clark* on January 20, 1993 and as reported in the Ohio State Bar Journal on February 8, 1993. On or about May 8, 1993 Inscore learned from reading a publication of the Ohio Trial Lawyers that the *Clark* case would be reviewed on its merits by the Ohio Supreme Court.

20. On May 19, 1993 by letter sent to Radnor and Seats by Inscore, the check in the sum of $50,000 was returned in a letter which stated in its entirety as follows:

For your information, the Supreme Court has allowed a motion to certify in *Clark vs. Southview Hosp. & Family Health Ctr.*, 1992 Ohio App. Lexis 4516 (Montgomery County), for purposes of deciding on the merits issues which were addressed by *Albain* only in dicta.

We believe the fact that both parties were unaware of the fact that the Court had granted the motion constitutes a mutual mistake, rendering any settlement agreement unenforceable.

Moreover, terms were added to the release that were beyond the original settlement terms. As such, we believe the rule of law that the parties anticipated the signing of a mutually agreeable final document as a condition to a binding contract applies.

Accordingly, we are enclosing your draft for $50,000 and your proposed settlement document which we received on May 12, 1993.

Children's Exhibit 13.

### III. POSITIONS OF THE PARTIES.

### A. POSITION OF THE DEFENDANT CHILDREN'S HOSPITAL.

Children's contends that counsel for the parties had completed the negotiations regarding both the amount of the settlement and the text of the release and indemnity agreement and that therefore this Court should enforce the settlement even though it was not finally completed by the execution of the documents of settlement.

## B. POSITION OF THE PLAINTIFFS.

Plaintiffs argue that the settlement discussions never went beyond the executory stage. Secondly, the plaintiffs contend that they should not be required to complete the settlement by accepting the $50,000 draft because there was a mutual mistake on the part of both parties, i.e., not knowing that the Ohio Supreme Court had granted the motion to certify the record in *Clark, supra*. Plaintiffs contend that the mutual mistake is material because the acceptance of the appeal by the Ohio Supreme Court in *Clark* gives rise to the inference that the Ohio Supreme Court will modify in some measurable fashion the fourth syllabus in *Albain*, or in some way explain it so that the harsh results of the fourth syllabus of *Albain* will not apply in this case and justify a denial of Children's motion for summary judgment. Third, and alternatively, the plaintiffs contend that had the defendant Children's complied with the Ohio Supreme Court Rules for Reporting of Opinions, i.e., Rule 2(G)(3), it would have discovered that the Ohio Supreme Court had granted the motion to certify in the *Clark* case and so indicated when it filed its reply brief of March 22, 1993 in support of its motion for summary judgment.[3] Fourth and finally, the plaintiffs contend that there had been no final agreement on the text of the mutual release and agreement to indemnify, (Children's Exhibit 11), because there was no resolution on whether plaintiffs or Children's would select the attorney to defend Children's under the provisions of the Indemnity Agreement.[4]

## IV. APPLICABLE LAW.

Children's relies upon the decision in *Bostick Foundry v. Lindberg*, 797 F.2d 280 (6th Cir.1986). In that case, Judge Krupansky writing for the majority in a split decision declared that "once concluded, a settlement agreement is as binding, conclusive, and final as if it had been incorporated into a judgment and the actual merits to the antecedent claims will not thereafter be examined." In *Bostick*, the settlement agreement was placed before the district court judge and approved even though it had not thereafter been journalized.

The question that arises in this case is whether discussions between the parties may be determined by the trial court to reach the status of a binding settlement even though no settlement entry approved by the parties has been presented to the Court and no executed settlement agreement exists.

A substantial body of law has developed with respect to the judicial enforcement of settlement agreements between the parties. Most of the cases make the finding that a settlement agreement exists and then go about deciding whether it should be enforced. *See, e.g. Bowater North American Corp. v. Murray Machinery, Inc.*, 773 F.2d 71, 76–77 (6th Cir.1985); *Odomes v. Nucare, Inc.*, 653 F.2d 246, 252 (6th Cir.1981); *United States v. Scholnick*, 606 F.2d 160, 166 (6th Cir.1979); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1371 (6th Cir.1976), *cert. denied* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Kukla v. National Distillers Products Co.*, 483 F.2d 619, 621 (6th Cir.1973); *All States Insurance Investors, Inc. v. Bankers Bond Co.*, 343 F.2d 618, 624 (6th Cir.1965) *cert. denied*, 382 U.S. 830, 86 S.Ct. 69, 15 L.Ed.2d 74 (1965).

The case law indicates that a settlement agreement may be enforced even where the agreement has not been arrived at in the presence of the Court nor reduced to writing. *See Odomes v. Nucare, Inc., supra, Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3rd Cir.1970); *Good v. Pennsylvania R.R. Co.*, 384 F.2d 989, 990 (3rd Cir.1967); *Main Line Theatres, Inc. v. Paramount Film Distributing Corp.*, 298 F.2d 801 (3rd Cir.1962), *cert. denied*, 370 U.S. 939, 82 S.Ct. 1585, 8 L.Ed.2d 807 (1962).

---

3. The motion filed by Children's for summary judgment was filed *after* the Ohio Supreme Court voted to accept the appeal in *Clark* by January 20, 1993, *see* 65 Ohio St.3d 1498, 605 N.E.2d 951 but before the February 8, 1993 publication of the Ohio State Bar Journal which is the first written notice of the Court's action.

4. During the evidentiary hearing on July 19, 1993, Mr. Inscore, by way of argument, contended that if plaintiffs were given the option to select the attorney in the indemnity situation, and if asked by plaintiffs to represent them under the duty imposed by the indemnity agreement, he would not bill the plaintiffs for his services.

The case law regarding enforcement of settlements is largely silent on the question of whether a settlement agreement has in fact been reached. Such was the dispute, however, in *Kukla v. National Distillers Products, supra.* In that case, the decision of the district court that a settlement agreement had been reached was reversed and remanded for an evidentiary hearing because the trial court had failed to hold an evidentiary hearing and relied upon statements of lawyers and affidavits filed by lawyers to resolve a dispute in fact. That decision does not address whether the burden of proof should be by mere preponderance or clear and convincing.

In this case, the issue is whether the discussions between counsel and the exchange of the letters and proposed releases and indemnity agreements reached the stage of an enforceable settlement agreement. In such a context and where there has been no judicial supervision of the settlement process, this Court holds that the moving party for judicial enforcement of the alleged agreement must establish by clear and convincing evidence that the parties entered into a settlement agreement resolving all issues.

In this case, it is apparent and without dispute that the discussions between counsel as to a settlement involved more than an agreement on dollars to be paid for the release. Of additional concern to Children's was an indemnity agreement that would insure that Children's would have no additional involvement in the case under claims for contributions by any of the remaining defendants.

Mr. Inscore, on behalf of the plaintiffs, maintained that Children's second effort in drafting an agreement with indemnity provisions still did not resolve whether Children's or the plaintiffs would be permitted to select the lawyer who would be hired to represent Children's under the provisions in the second proposed Release and Indemnity Agreement (Children's Exhibit 11) and therefore the process of arriving at a binding settlement had not been achieved.

The response of Children's to the issue of selection of counsel with respect to the Indemnity provisions of the settlement agreement is that it is an issue of minor consequence and should not be considered with respect to whether an agreement had been reached.

The dispute over the importance of the lawyer selection provisions of the indemnity agreement points up the need for the clear and convincing burden of proof standard in situations where the parties have not presented a settlement agreement to the court and are in disagreement as to whether a settlement agreement has been reached. Binding settlements in litigation matters are of vital importance to the expedient and just administration of justice. But where there exists a dispute as whether a settlement has been reached by the parties and there is no executed writing which spells out the settlement and where the alleged oral settlement has not been reached within the purview of judicial supervision, judicial resources should not be devoted to determining whether a contract of settlement has been achieved by applying the preponderance of the evidence standard.

In this case, after considering all the evidence presented which includes the testimony of Mr. Inscore, Mr. Radnor and Ms. Seats, the court finds that the moving party, the defendant Children's has failed to establish by clear and convincing evidence that the negotiations between Mr. Inscore and Mr Radnor aided by Ms. Seats had reached the stage where a binding contract involving the payment of monies to the plaintiffs by Children's to be accompanied by releases and a mutually agreed upon indemnity agreement had been accomplished.[5]

---

5. Based upon the court's determination that the evidence fails to demonstrate the formation of a binding contract of settlement, the court need not address or determine the issue of "mutual mistake" advanced by the plaintiffs as a basis for excusing performance of the settlement agreement. Additionally, the Court need not deter-

mine whether Children's failure to advise opposing counsel or this Court of the fact that a notice of appeal was filed in *Clark, supra,* or that the Ohio Supreme Court will consider *Clark* on the merits constituted a violation of Rule No. 2(G)(3) of the Ohio Supreme Court's Rules for the Reporting of Opinions.

Based on the foregoing analysis, the Court denies the motion of Children's (Docket No. 127) to enforce the alleged settlement.[6]

IT IS SO ORDERED.

---

**6.** During the evidentiary hearing, counsel for Children's indicated that it was likely that Children's would move the court for leave to file an interlocutory appeal in the event the motion to enforce the settlement agreement was denied. This case is presently on the complex track under the Court's Local Rules dealing with differentiated case management. *See* Local Rule 8:2.1(3) and the case has been scheduled for trial on January 3, 1994. The court is of the view that it should delay a ruling on Children's motion for summary judgment until the Ohio Supreme Court rules in the *Clark* case. *It seems apparent that the decision of the Ohio Supreme Court to grant review in* Clark indicates that fourth syllabus in *Albain* will likely be reconsidered. Under those circumstances, it is unlikely that the trial in this case will proceed as scheduled in January of 1994. In the event Children's chooses to seek an interlocutory appeal, it is directed to so move by August 6, 1993 and the plaintiffs will have leave to August 16, 1993 to file a response.