UNITED STATES of America, on behalf of its Agency, the UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, Plaintiff,

v.

Annette Medley JONES–WILLIAMS and Carl Murphy, Sr., Defendants.

No. 1:C–93–1713.

United States District Court, M.D. Pennsylvania.

Oct. 14, 1994.

---

John A. Morano, U.S. Attorney's Office, Scranton, PA, for plaintiff.

Emily L. Long, Harrisburg, PA, for defendants.

### MEMORANDUM

VANASKIE, District Judge.

This is an action brought by the United States of America on behalf of the Department of Housing and Urban Development to foreclose on a mortgage encumbering residential property.[1] Defendant Annette Medley Jones–Williams ("Jones–Williams") has filed a document titled "Motion Asserting Defenses to Plaintiff's Complaint in Foreclosure," which will be construed as a motion to dismiss the complaint. Also pending before the Court is HUD's motion for summary Judgment. Both Jones–Williams' motion to dismiss and HUD's motion for summary

1. Hereinafter the Plaintiff shall be referred to as "HUD."

2. The Loan Interest and Protection Law is popularly known as "Act 6," and will occasionally be referred to herein by that title.

3. The acceleration clause authorized the holder to accelerate the maturity if any installment remained unpaid at the date of the next installment.

4. HUD's motion for summary judgment was not accompanied by a statement of material facts as

judgment concern the question of whether the notice requirements of the Pennsylvania Loan Interest and Protection Law, 41 P.S. §§ 101, et seq., are applicable to the HUD foreclosure action at issue in this litigation.[2] Because it is evident that the Act 6 notice provisions are preempted by federal law, defendant's motion to dismiss, based as it is on an alleged failure to comply with the Act 6 notice requirements, will be denied. Although HUD's position on this issue will be sustained, HUD's summary judgment motion will be denied because this case is not in a proper procedural posture for the entry of summary judgment.

### I. FACTUAL BACKGROUND

On August 14, 1984, Defendants Jones–Williams and Carl Murphy, Sr. ("Murphy") obtained a loan in the amount of $21,900.00 from Colonial Mortgage Service Company Associates, Inc. ("Colonial Mortgage"). The loan was evidenced by a promissory note and secured by a mortgage. The promissory note bore the interest rate of fourteen (14) percent per annum, provided for monthly installments, and contained an acceleration clause.[3]

The property secured by and subject to the mortgage is located at 202 Muench Street, Harrisburg, Pennsylvania. Jones–Williams and Murphy are the current record owners of that property.

■ It appears undisputed that defendants' mortgage had been insured by HUD under the National Housing Act. 12 U.S.C. § 1701, et seq.[4] Pursuant to 12 U.S.C. § 1715u and implementing regulations, see 24 C.F.R. §§ 203.640, et seq., the Secretary is authorized to accept assignment of the in-

to which it contended that there are no genuine issues to be tried, although such a statement is required by Local Rule of Court 7.4. It should be noted, however, that HUD has supplied evidentiary support for some of the factual assertions made in its memoranda of law, and Jones–Williams has not contested the unsupported factual assertions made by HUD. Under these circumstances, it is appropriate for the Court to indicate that HUD's factual assertions appear to be undisputed.

sured mortgage and suspend monthly mortgage payments for a period of thirty-six (36) months.[5]

It also appears undisputed that defendants Jones–Williams and Murphy were accepted into this "mortgage assignment program" in November of 1985. The mortgage in question was assigned to HUD in December of 1985. (Exhibit "C" to the brief in support of HUD's summary judgment motion (Dkt. Entry # 8).) HUD suspended monthly mortgage payments for at least thirty-six (36) months.

The complaint alleges that "[t]he mortgage is in default because Defendants have failed to make monthly payments of principal and interest due on August 1, 1992 and thereafter." (¶ 11.) Jones–Williams does not appear to contest that the mortgage is in default, but does assert that she has made payments of approximately $9,000 against the mortgage. (See Exhibit "C" to the "Brief in Support of Motion for Summary Judgment" (Dkt. Entry 13).)

HUD contends that it sent to Defendants "a thirty day late letter, a sixty day late letter and a ninety day late letter." (HUD's "Memorandum in Opposition to Motion for Summary Judgment" at 4 (Dkt. Entry # 18).)[6] On September 1, 1993, HUD sent by certified mail addressed to Jones–Williams a "NOTICE OF INTENTION TO FORECLOSE AND ACCELERATE MORTGAGE BALANCE AND TO REPORT TO CREDIT BUREAU." (Exhibit

"D" to the memorandum in support of HUD's motion for summary judgment (Dkt. Entry # 8).) The Notice, in pertinent part, provided:

The minimum amount of money that you will have to pay to prevent foreclosure at this time is $10,583.99. If we do not receive this money by, 08/31/93, you will also need to include an additional monthly payment . . .

All funds MUST be *RECEIVED* at *OUR* office shown on this letterhead not later that [sic] thirty (30) days from the date of this letter. . . .

If you do not pay the amount specified [above] WITHIN THIRTY (30) DAYS from the date of this letter, or tender a deed-in-lieu of foreclosure . . ., we will accelerate the mortgage obligation (declare the entire mortgage due and payable immediately). We will do this without further demand and instruct our attorney to start foreclosure proceedings.

Jones–Williams received the Notice on September 3, 1993.

## II. *PROCEDURAL BACKGROUND*

A Complaint in Mortgage Foreclosure was filed in this Court on November 3, 1993.[7] Named as Defendants were Jones–Williams and Murphy, the co-owners of the encumbered property.

Murphy failed to answer the Complaint.[8] On January 6, 1994, this Court granted HUD's Motion for Service by Posting (Dkt.

---

**5.** Section 203.650 of Title 24 of the Code of Federal Regulations, in pertinent part, provides:
(a) The Secretary will accept assignments of mortgages insured under this part in order to avoid foreclosure when the following conditions are met:
(1) The mortgagee has informed the mortgagor that it intends to foreclose the mortgage;
(2) At least three full monthly installments due on the mortgage are unpaid after application of any partial payments which may have been accepted but not yet applied to the mortgage account.
(3) The property is the mortgagor's principal place of residence. . . .
(4) The mortgagor does not own other property subject to a mortgage insured or held by the Secretary . . .
(5) The mortgagor's default has been caused by circumstances beyond the mortgagor's control which render the mortgagor unable to

correct the delinquency within a reasonable time for make full mortgage payments.
(6) There is a reasonable prospect that the mortgagor will be able to resume full mortgage payments after a period of reduced or suspended payments not exceeding thirty-six (36) months and will be able to pay the mortgage in full by its maturity date extended, if necessary, by up to 10 years.

**6.** The record does not provide evidentiary support for this assertion.

**7.** This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1345.

**8.** Jones–Williams asserted in her "Brief in Support of Motion for Summary Judgment," (Dkt. Entry # 13), that Murphy has "vacated the premises."

Entry # 9) with respect to Murphy. On April 25, 1994, a Default (Dkt. Entry # 24) was entered against Murphy and on May 4, 1994, Judgment (Dkt. Entry # 25) was entered in favor of HUD and against Murphy, only, in the amount of $44,127.92 plus interest and for foreclosure and sale of the mortgaged property.[9]

On November 29, 1993, Jones–Williams filed a "Motion Asserting Defenses to Plaintiff's Complaint in Foreclosure." (Dkt. Entry # 4).[10] A supporting brief was filed on December 9, 1993. (Dkt. Entry # 5.)

Jones–Williams' motion sought dismissal for insufficiency of process (F.R.C.P. 12(b)(4), insufficiency of service of process (F.R.C.P. 12(b)(5), and lack of subject matter jurisdiction (F.R.C.P. 12(b)(1), based upon HUD's alleged failure to comply with the notice requirements set forth in 41 P.S. § 403(c). Specifically, Jones–Williams contends that the HUD Notice was deficient because it did not clearly and conspicuously state the debtor's right to cure the default; did not state exactly what performance and sum of money must be tendered to cure the default; did not state the method or methods by which the debtor's ownership could be terminated; and did not apprise the debtor

of her right to transfer the real estate to another person or refinance the obligation. Jones–Williams also asserts that the notice of debtor's right to prevent foreclosure was late and, in effect, no notice was given.[11]

On December 30, 1993, HUD filed a Motion for Summary Judgment (Dkt. Entry # 7). HUD asserts that because the mortgage in question is administered under a federal program, Pennsylvania notice requirements are superseded by the federal notice requirements, which it claims to have satisfied.

On January 13, 1994, Jones–Williams filed a document captioned "Brief in Support of Motion for Summary Judgment" (Dkt. Entry # 13), which will be construed as having been submitted in opposition to HUD's summary judgment motion. Jones–Williams contends that this case "is not ripe for summary judgment." (*Id.* at p. 4.) She notes, in this regard, that she has not yet answered the Complaint and "there are disputes as to the facts of the case as set forth in plaintiff's Complaint." (*Id.*)[12] In addition, Jones–Williams attempts to distinguish cases cited by HUD in support of the proposition that the Pennsylvania notice requirements are superseded by Federal law.[13]

9. Plaintiff arrives at the figure of $44,127.92 (¶ 16, Dkt. Entry # 1) in the following manner:

| | | |
|---|---|---|
| (a) | $21,891.97 | Unpaid principal balance |
| (b) | $21,190.53 | Unpaid interest on the principal balance at 14% per annum, through September 23, 1993 |
| (c) | $ 1,094.60 | Attorney's fees (5%) |
| (d) | $ 15.47 | Service Charge |
| (e) | $ 13.46 | Late Charge |
| (f) | $ −444.24 | Tax Escrow Applies (Subtracted) |
| (g) | $ 366.13 | School Taxes Due for 1993 |
| | $44,127.92 | Total |

10. A handwritten note on the motion itself states that the motion is "to dismiss per Atty. Long."

11. Although the Notice stated that Debtor could prevent foreclosure by paying $10,583.99 by August 31, 1993, the Notice was dated September 1, 1993 and defendant did not receive the Notice until September 3, 1993 (¶ 5, Dkt. Entry # 5). Jones–Williams claims that because she did not receive the Notice until September 3, 1993, she was unable to meet the August 31st deadline. What the Notice in fact says is "the minimum amount of money that you will have to pay to prevent foreclosure at this time is $10,583.99. If we do not receive this money by August 31, 1993 you will also need to include an additional

monthly payment...." The next paragraph states "[i]f you do not pay the amount specified in paragraph 3 WITHIN THIRTY (30) DAYS from the date of this letter ... we will accelerate the mortgage obligation...." Jones–Williams then had 30 days from the date on the Notice, September 1, 1993, to cure the default. *See* Ex. "D" to the brief in support of HUD's summary judgment motion (Dkt. Entry # 8).

12. Jones–Williams, however, does not identify the facts that are disputed.

13. In her brief, Jones–Williams also contests the amount she owes in attorney's fees claimed by

On February 14, 1994, HUD filed a document titled "Memorandum in Opposition to the Motion for Summary Judgment" (Dkt. Entry # 18), which will be treated as a Reply Brief in Support of HUD's Summary Judgment Motion. The issue to be resolved on the pending motions of Jones–Williams and HUD is whether the notice requirements of 41 P.S. § 403(c) are applicable here.

### III. DISCUSSION

■ "[T]he Secretary [of HUD] is authorized to foreclose on any property or commence any action to protect or enforce any right conferred upon him by ... law...." 42 U.S.C. § 3535(i)(1). "[F]ederal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). "HUD has adopted procedures which comport with due process pursuant to which a mortgagor receives adequate notice and an opportunity to be heard prior to any foreclosure." *United States v. Stohr*, 1993 WL 44238, 1993 U.S.Dist. LEXIS 2228 (E.D.Pa.1993).[14]

In *United States v. Black*, 622 F.Supp. 669 (W.D.Pa.1985), the court addressed the argument that HUD failed to comply with Pennsylvania statutes which imposed preconditions to the institution of an action in mortgage foreclosure. The court held that federal law preempted state law imposing conditions to a mortgage foreclosure action where a federal agency sought foreclosure in a federal district court pursuant to federal statutes and regulations. The court observed, "it is an established rule that the federal law as administered by United States Courts governs the remedies available upon default of a federally held or insured loan." *Id.* at

673. *See also, United States v. Scholnick*, 606 F.2d 160 (6th Cir.1979).

In *Kimbell* the Supreme Court identified three factors that guide the determination of whether Congress intended to have state law apply to certain federal programs:

1) Whether the nature of the federal program demands a single, nationwide standard;

2) Whether application of state law would frustrate the specific objectives of the federal program; and

3) The extent to which application of the federal rule would disrupt commercial relationships based on state laws. 440 U.S. at 728–729.

*Kimbell* dealt with the relative priority of private and contractual liens arising from federal loan programs. The Court found that priority was largely determined under state law because plaintiffs were third-party lien holders and not federal program participants. By way of contrast, where the parties to an action are the United States and a debtor, and no third party commercial interests are affected, "the factors that favor applying state law are considerably weakened if not removed entirely from consideration." *United States v. Spears*, 859 F.2d 284, 290 (3rd Cir.1988); *Ayers v. Philadelphia Housing Authority*, 908 F.2d 1184, 1191 (3rd Cir. 1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1086 (1991).

*Spears* concerned issues similar to those in the case at hand. The defendants were a husband and wife who obtained their original mortgage from the Farmers Home Administration ("FmHA").[15] In October 1982 and January 1983, the FmHA advised the defendants that they had violated the mortgage agreement and could either sell the property

HUD. The Complaint (¶ 17) states that attorney's fees of 5% conform with paragraph nine of the mortgage. Paragraph nine states that in addition to principal and interest, a percentage of the principal may be recovered as attorney's commission. On the mortgage in question the percentage has not been designated, and thus, the attorney's fees are disputed. Jones–Williams contends that this is a material fact in dispute and, therefore, summary judgment is not warranted. HUD subsequently waived the claim to five percent attorney's fees.

**14.** HUD's right of foreclosure is set forth in 12 U.S.C. § 1710(g) and is applied to insured mortgages acquired by HUD by 12 U.S.C. § 1715u(b)(1).

**15.** Defendants, the Spears, separated and eventually divorced. Ms. Rivera, the former Mrs. Spears, is the focus of the court's opinion.

or refinance the mortgage and pay the government in full. In March 1984, FmHA informed defendant that she had defaulted on the mortgage.

Foreclosure proceedings began in the district court in the summer of 1985. The district court held that FmHA was required to comply with two Pennsylvania statutes, Act 6, 41 P.S. § 401, *et seq.*, and Act 91 of 1983, 35 P.S. § 1680.401c. Relying on *Kimbell,* the district court found that the statutes neither afforded additional substantive benefits to FmHA mortgagors nor imposed a substantial administrative burden on the government. *Spears,* 859 F.2d at 285–286.

On appeal, the Third Circuit held that FmHA did not need to comply with Pennsylvania state statutes, including Act 6, when it chose to utilize the federal court to foreclose on a mortgage in Pennsylvania. In our Court of Appeals' analysis, the critical factor in determining whether state law should control is whether there is a "threat to commercial relationships founded on expectations of third parties relying on existing state statutes." *Id.* at 290. The court stated, "[b]ecause no commercial interests or third parties are affected by the utilization of federal procedures, the rationale [in *Kimbell* ] ... is not controlling. ... [T]his case presents no compelling reason [to adopt state law]." *Id.* at 291.

Contrary to the assertions of Jones–Williams, the analysis in *Spears* is fully applicable here. While, as Jones–Williams notes, the Third Circuit questioned the applicability of Act 6 to the facts presented in *Spears,* 859 F.2d at 288, the Court specifically held that the federal agency "need not comply with Act 6 ... *whenever* it chooses to utilize the federal court to foreclose on a mortgage in Pennsylvania." *Id.* at 291 (emphasis added). Moreover, our Court of Appeals did not hold, as Jones–Williams suggests, that FmHA procedures offered greater procedural protections than Act 6. Instead the Court of Appeals noted that payment moratorium provisions and "interest credit subsidies" did not

seem to be "less favorable than the state refinancing scheme." *Id.* at 291. In any event, the Third Circuit ruling in *Spears* did not turn upon a comparison of whether state or federal law provided greater procedural protections.

As in *Spears,* this case does not present any "threat to commercial relationships founded on expectations of third parties relying on existing state statutes." *Id.* at 290. Since, as the Court of Appeals has held, "the FMHA need not comply with Act 6 ... whenever it chooses to utilize the federal court to foreclose on a mortgage in Pennsylvania," *id.* at 291, HUD, in administering a similar federal loan program, need not comply with Act 6.

In short, "the respective rights and obligations of a federal mortgagee and a defaulting mortgagor under a national housing program ... are governed by federal law which preempts state laws in the field, such as Act 6." *Stohr,* 1993 WL 44238, *2, 1993 U.S.Dist. Lexis 2228, 4–5. Accordingly, Jones–Williams motion to dismiss will be denied.

As noted above, Jones–Williams has not yet answered the complaint and the record in this case does not include evidence to support all of HUD's factual assertions. Accordingly, HUD's summary judgment motion will be denied, without prejudice to its right to move for summary judgment after Jones–Williams has answered the complaint.[16]

---

16. This ruling forecloses Jones–Williams from attempting to defend against this action based upon alleged non-compliance with Act 6. It is not clear whether the factual assertions made by HUD may, in good faith, be controverted. In this regard, counsel for Jones–Williams is reminded of her obligations under Rule 11 of the Federal Rules of Civil Procedure in answering the complaint and responding to any summary judgment motion presented by HUD.